COMMONWEALTH *vs.* MICHAEL R. GRIECO.

Suffolk.     January 3, 1949. — February 3, 1949.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Evidence*, Admissions and confessions.  *Robbery*.

A statement made in the presence of a police officer by a defendant charged with robbery to one who had been with the defendant and the victim of the robbery shortly before it occurred, "I didn't want to do this, but you are in this as much as me and I ain't going to take this rap alone," might properly be considered to be an admission by the defendant, although in the same conversation he denied having committed the robbery.

A finding that a defendant was guilty of robbery was warranted by evidence that the victim of the robbery had been with the defendant and others shortly before it occurred, evidence tending to identify two assailants who committed the robbery as the defendant and one of the others, and evidence of an admission by the defendant.

INDICTMENT found and returned on January 10, 1947.

The case was tried before *Morton*, J.

*H. F. Callahan*, for the defendant.

*R. S. Bernard*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.    The defendant, who together with one Colatrella was indicted for robbery, was found guilty.  The case comes here on his exceptions to certain rulings on evidence and to the denial of his motion for a directed verdict.

From the testimony of one Craghan, called by the Commonwealth, the jury could have found the following facts: Shortly before one o'clock on the morning of December 2, 1946, Craghan went to the Red Roof Cafe in Revere where he purchased a drink of whiskey.  As he was leaving the café a taxicab, which was owned by the defendant, drove up and stopped.  The defendant, Colatrella, and a man who he later learned was Duggan, were in the cab.  A man with whom Craghan had been talking told one of the men in the cab that Craghan wanted to go to East Boston.  The man

in the cab replied, "We'll take him but we will have a drink first." Craghan got into the cab with the three men and was driven to another café in Revere called the Open Door. The four men entered the café and Craghan "bought a round of drinks." Another round of drinks was ordered and the defendant said to Craghan, "pay for this too." Craghan went into the toilet and took $30 which was in his billfold and put it in his pocket. Upon returning from the toilet he stated that he had no more money with which to buy drinks and asked if he could get a check cashed. After another round of drinks had been ordered by Colatrella the four men left the café and went to the taxicab. The defendant got behind the wheel but Colatrella pushed him to one side, saying, "You're too drunk to drive," and took his place at the wheel. Craghan, who in the meantime had gotten into the back of the taxi, was told to leave, and as he was getting out he was struck on the side of the head and his hat was knocked off. He then "walked around different streets for a half hour or more." It was snowing at the time and his coat was over the top of his head. While he was walking he heard a noise in back of him and he was hit over the head from behind and was "knocked down on his face." He received "three or four good kickings," and while he was being kicked he "got a glimpse of the profile of the man kicking him" and observed that the man was Colatrella. Craghan "got a glance at a second man there" and, although he did not see his face, noticed that he was wearing a short sport coat and sport shirt. The defendant, when seen by Craghan earlier that morning, was wearing "the same kind of clothes." Craghan remained on the ground, face down, for five minutes after the assailants had run away. He then discovered that several articles of clothing contained in a bag, his watch, and the $30 which was in his pocket were missing, and he reported the matter to the police.

Gannon, a police officer, testified that on the morning of December 11, 1946, he took Duggan to the defendant's cell in the Revere police station and that the following took place: In response to questions put by Gannon each ad-

mitted that he knew the other. The defendant admitted that he had been with Duggan, Colatrella and another man at the Open Door in Revere on the morning of December 2. Duggan then said to the defendant, "You're a liar, I wasn't with you, you got the wrong guy, Mike, not me. I was at the Bay Side with you Mike and we did 'wrists' (Indian wrestling) with arms on the bar." The defendant said, "Yes and you were with us at the Red Roof. Look Joe I didn't want to do this, but you are in this as much as me and I ain't going to take this rap alone." Duggan said, "I don't know a thing. You got the wrong guy, you're all by yourself." The defendant then denied that he had beaten or robbed anybody. Duggan in turn denied that he had been at either the Red Roof Cafe or the Open Door with the defendant. The defendant then called Duggan a liar and said, "Look Joe I did not want to do this, but they got me in the jackpot and you and . . . [Colatrella] are the only ones that can get me out. I am not going to stay in here . . . if I am you are going to . . . [stay] with me."

All of the testimony of Officer Gannon recited above was admitted over the defendant's objections and exceptions. There was no error. Relying on cases such as *Commonwealth* v. *Kosior*, 280 Mass. 418, 422, and *Commonwealth* v. *Polian*, 288 Mass. 494, 496, the defendant argues that this evidence was not admissible. But those cases are not controlling here. This is not a case of the introduction in evidence of an accusation made to a defendant which he unequivocally denied. The evidence objected to here consisted of a conversation in which the defendant, Duggan and Officer Gannon participated. In the course of that conversation the defendant admitted that he knew Duggan and that he had been at the Open Door Cafe with Duggan, Colatrella and another man on the morning of December 2. And his statement to Duggan, "Look Joe I didn't want to do this, but you are in this as much as me and I ain't going to take this rap alone," was evidence in the nature of an admission. The fact that during the same conversation he also denied that he had committed the robbery did not make the evidence inadmissible. *Commonwealth* v. *Hebert*, 264 Mass.

571, 578.  See *Commonwealth* v. *Trefethen,* 157 Mass. 180, 196–200.  Since this evidence was admissible there was no error in permitting the Commonwealth to cross-examine the defendant concerning it.  Nor was there error in allowing the district attorney to argue that the defendant's statement, "I ain't going to take this rap alone," was an admission.

The defendant's exception to the denial of his motion for a directed verdict must be overruled.  The evidence recited above shows that the defendant, Colatrella and Duggan had been with Craghan at the Open Door Cafe on the morning of December 2 at a time shortly before the robbery; and that Craghan, who had been told to leave the taxicab, was later attacked by two men.  One of the assailants was identified by Craghan as Colatrella, and the other was described by him as wearing a sport coat and sport shirt which were "the same kind of clothes [the defendant had worn] when he saw him earlier."  This evidence, when considered together with the statements of the defendant discussed above, was sufficient to warrant the judge in submitting the case to the jury.  This is not a case of which it can be said that the evidence is as consistent with innocence as it is with guilt.  Cases such as *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400–401, *Commonwealth* v. *Carter,* 306 Mass. 141, 147, and *Commonwealth* v. *Albert,* 310 Mass. 811, 816–817, relied on by the defendant, are not controlling.  "A jury may find a crime proved beyond a reasonable doubt even though the inference of guilt from the facts established is not inescapable or necessary."  *Commonwealth* v. *Ehrlich,* 308 Mass. 498, 500.

*Exceptions overruled.*