COMMONWEALTH *vs.* LEONARD K. HOLIDAY.

Middlesex.    April 5, 1965. — April 29, 1965.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Accessory.  Evidence,* Acceptance or rejection of testimony.

At the trial of an indictment under G. L. c. 274, § 4, charging the defendant with being an accessory after the fact by harboring an escapee from a penal institution, where there was evidence that the defendant and the escapee knew each other, that the escapee at a late hour one evening came to an inn at which the defendant worked and lived, and that they went to the defendant's room and were found in bed there by the police some four hours later, the jury were entitled to believe testimony by the defendant and the escapee that when they went to the room the escapee told the defendant that he had escaped from the penal institution, and to disbelieve further testimony by them that the defendant refused to allow the escapee to stay in the room but was forced to do so by the escapee by threatened use of a knife; and a finding that the defendant, knowing that the escapee had committed the felony of escaping, harbored him with intent that he should avoid arrest, and a verdict of guilty, were warranted.

INDICTMENT found and returned on September 11, 1963.

The case was tried in the Superior Court before *Paquet,* J.

*Ronald J. Chisholm* for the defendant.

*Donald L. Conn,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

KIRK, J.   The defendant was indicted and found guilty as an accessory after the fact under G. L. c. 274, § 4,[1] in that, knowing one Peter F. Kelly (Kelly) to be an escapee from the Massachusetts Correctional Institution at Concord (the institution) and therefore under G. L. c. 268, § 16,[2] a felon,

---

[1] So far as pertinent the statute provides: "Whoever, after the commission of a felony, harbors . . . the . . . felon . . . knowing that he has committed a felony . . . with intent that he shall avoid . . . arrest, trial or punishment, shall be an accessory after the fact, and . . . be punished . . . ."

[2] "A prisoner who escapes . . . from any penal institution . . . may be pursued and recaptured and shall be punished by imprisonment in the state prison . . . or . . . in a jail or house of correction . . . ."

he did harbor Kelly with the intent that Kelly should avoid
arrest. The defendant excepted to the judge's denial of
his motion for a directed verdict. The sole question pre-
sented is whether the evidence sustains the verdict.

The defendant concedes that Kelly had in fact escaped
from the institution, and had thereby committed a felony.
The controversy centers on two elements of the offence
charged: (1) whether the defendant, *knowing* that Kelly
was an escapee, harbored him, and (2) whether the defend-
ant harbored Kelly *with intent* that Kelly should avoid ar-
rest. We state the evidence bearing on these issues. Both
the defendant and Kelly had been inmates at the institution
at the same time and knew one another. The defendant
was released on parole on July 5, 1963. When he left the
institution he told Kelly that he had a job at a named inn in
Sudbury.

On July 25, 1963, Kelly "left" the institution. On the
evening of August 2, 1963, the manager of the inn told the
defendant that someone had called him and had left a num-
ber for him to call back. It was Kelly who had called.
The defendant called the number and said, "Hello, this is
Lennie," but no one answered so he hung up. He sat on
the lawn. Kelly arrived by taxi at 11 P.M. They sat down
on the grass and then went to the defendant's room in the
coach house on the second floor where at least five other
employees of the inn lived in rooms along the same corri-
dor. An employee knocked at the door and asked for help
to push his car. The defendant and Kelly both helped to
push the car and returned to the defendant's room. They
had some beer. At 4 A.M. on August 3, 1963, the police en-
tered the defendant's room and found the defendant and
Kelly in bed together. The defendant jumped out of bed
and was on the floor near the door when both men, unclad,
were arrested. The room and the clothing of both were
searched. The men were taken to the police station where
the defendant told the police that he had told Kelly that he
could not stay with him, "that Kelly pulled a knife on . . .
[him] and told him that he was staying there; that he was

afraid of Kelly and allowed him to stay.'' No knife was found by the police in the search of the defendant's room or of the men's clothing.

Both the defendant and Kelly testified in substance that, upon returning to the defendant's room after having pushed the car (approximately a half hour or forty-five minutes after Kelly's arrival), Kelly told the defendant that he had escaped from the institution and wanted to stay overnight. The defendant refused, whereupon Kelly pulled a knife, put it to the defendant's throat, and said that he was going to stay until five o'clock. Kelly ordered the defendant to take off his clothes and go to bed. Both men fell asleep and were awakened when the police came into the room. Kelly testified that he was in the defendant's bedroom for five hours after he had told the defendant that he had escaped from the institution.

On the foregoing evidence the case was submitted to the jury. No exception was taken to the judge's charge. We accordingly conclude that it was complete and correct in all essentials.

The applicable law is clear. Where, as here, knowledge on the part of the defendant that Kelly was an escapee is an essential element of the offence charged, proof of that knowledge is a prerequisite to conviction. The knowledge of the defendant is personal to him and the statute recognizes no substitute. *Commonwealth* v. *Horsfall,* 213 Mass. 232, 236–237. *Commonwealth* v. *Boris,* 317 Mass. 309, 315–316, and cases cited. A person's knowledge, however, like his intent, is a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had, and frequently is had, to proof by inference from all the facts and circumstances developed at the trial. *Commonwealth* v. *Devaney,* 182 Mass. 33, 36. *Commonwealth* v. *Boris,* 317 Mass. 309, 315. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 355–356.

The defendant contends, nevertheless, that there is, on the one hand, no evidence that he knew that Kelly was an escapee from the institution until Kelly told him in his bed-

room and that thereupon he became Kelly's hostage and had no intent that Kelly should avoid arrest. On the other hand, the defendant contends that if the testimony of Kelly's disclosure to him of his escape is disbelieved, there is no basis for a finding that the defendant knew that he was sheltering an escapee. In effect, he argues that the jury must accept the testimony of what occurred in the bedroom in its entirety or not at all.

The Commonwealth need not accept the dilemma posed by the defendant. It is entitled, as is the defendant, to the verdict of the jury based upon all the evidence in the case. *Commonwealth* v. *Hughes,* 2 Allen, 518. It is elementary that the acceptance or rejection of oral testimony, in whole or in part, is within the exclusive province of the jury. *Commonwealth* v. *Davis,* 284 Mass. 41, 51. *Marquandt* v. *Boston Young Women's Christian Assn.* 282 Mass. 28, 31. *Limoges* v. *Limoges,* 287 Mass. 260. We do not intimate that the evidence would be insufficient to convict if the jury had rejected in its entirety, as a complete fabrication, the disclosure and threat version given by the defendant and Kelly. See *Commonwealth* v. *Grieco,* 323 Mass. 639, 642. We need not dwell upon the effect of the evidence thus limited because the jury were not obliged to consider the evidence with the restriction argued by the defendant. The jury could reject, and doubtless did reject, the testimony that Kelly, by the threatened use of a knife, compelled the defendant to give him refuge. At the same time, they could take the defendant at his word that he knew from Kelly's own lips, at least on the night of August 2, 1963, that he was an escapee, and could find that with that knowledge, the defendant harbored Kelly in his room. The act of harboring coupled with the requisite knowledge afforded sufficient basis for an inference by the jury of the final essential element of the offence, namely, that the harboring was done with the intent that Kelly would avoid apprehension by the police.

The motion for a directed verdict was properly denied.

*Exceptions overruled.*