COMMONWEALTH *vs.* LARRY CAUSEY.

Middlesex.   May 5, 1969. — June 3, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, &
REARDON, JJ.

*Search and Seizure.*

An affidavit executed in 1967 by an applicant for a search warrant in an
armed robbery case was deficient on its face under statutory and con-
stitutional requirements by reason of not stating facts essential to
show probable cause for issuance of the warrant where the affidavit
merely recited that the affiant had "information based upon . . .
statements made to me by eye-witnesses to a robbery, and also by my
own observations" and that "Based upon the foregoing reliable in-
formation — and upon my personal knowledge and belief" there was
probable cause to believe that the property sought was concealed and
could be found in the defendant's possession at described premises.
[126–128]

At the trial of an indictment for armed robbery, a conclusion was justified
that there was no necessity for a search warrant issued for a jacket
and shotgun some weeks after the robbery and on the day of the
defendant's arrest under an arrest warrant and of the obtaining of such
objects by the police officer who had executed the affidavit in support
of the search warrant where there was evidence presented following
denial of the defendant's motion to suppress that on the evening of the
robbery the officer had seen the jacket in the defendant's house and
the defendant voluntarily had shown him the gun in a closet and that
at the time of the arrest the defendant was wearing the jacket and the
officer did not search the defendant's house for the gun because he
"knew it was in the closet" and the defendant said "take it" and
"gave it to" him, and it did not appear that the search warrant was
in fact used; it was immaterial that deficiencies in the affidavit ren-
dered the search warrant invalid, and denial of the motion to suppress,
even if erroneous, was not prejudicial to the defendant and the objects
were admissible.   [128–130]

INDICTMENTS found and returned in the Superior Court on
February 10, 1967.

A motion to suppress evidence was heard by *Mitchell*, J.,
and the cases were tried before him.

*Robert A. Novick* (*Reuben Goodman* with him) for the
defendant.

*Barry M. Haight*, Assistant District Attorney, for the
Commonwealth.

Commonwealth *v.* Causey.

CUTTER, J.   Causey was found guilty and sentenced on three indictments charging armed robbery on December 22, 1966.   The case is before us on appeal under G. L. c. 278, §§ 33A–33H.

The only assignments of error argued in behalf of Causey arise from the denial of motions to suppress certain property seized.   It is contended that the affidavit in support of an application for a search warrant did not contain sufficient information to permit the search warrant to issue.   Also are presented the questions (a) whether testimony at the trial of the indictments showed that there was no necessity for any search warrant, and (b) whether the failure to suppress, even if erroneous, was not prejudicial because the evidence was admissible on grounds not apparent from evidence at the hearing on the motions to suppress.

1. An affidavit was executed under date of January 10, 1967, by Captain Murphy, a Lowell police officer.   Its text is set out in part in the margin.[1]   At a hearing on the motions to suppress on December 8, 1967, only this affidavit and the search warrant itself were introduced in evidence.   On the back of the search warrant there was an affidavit by Captain Murphy which stated (in part) that he received the warrant on January 10, 1967, and executed it, as follows, "On January 10, 1967 at 11 o'clock P.M. I searched the premises described in the warrant . . . and [t]he following is an inventory of the property taken pursuant to the warrant: One 12 gauge pump shotgun.   One red jacket."   The remainder of the hearing on the motions to suppress consisted entirely of argument by counsel.

---

[1] After stating on the printed form his name and police position, Captain Murphy proceeded (emphasis supplied), "2. I have information based upon . . . *statements made to me by eye-witnesses to a robbery,* and *also by my own observations.*   3. Based upon the foregoing reliable information — and upon *my personal knowledge and belief* — there is probable cause to believe that the property hereinafter described . . . is being concealed . . . and may be found in the possession of one Larry Causey at premises at number 21 Monarch Street . . . Lowell, occupied by Larry Causey . . . .   4. The property for which I seek the issuance of a search warrant is . . . a twelve gauge pump action shotgun, *believed to have been used in a certain robbery,* and a red jacket *believed to have been worn by a person committing a robbery.*"   Search was sought "of . . . a single dwelling at number 21 on Monarch Street . . . Lowell, occupied by . . . Larry Causey."

The affidavit was plainly deficient in stating the facts essential to showing probable cause for issuing a search warrant. This type of deficiency occurs in greater or less degree in altogether too many affidavits and is likely to impede greatly the administration of justice. Police officers making affidavits, and judges and clerks of court issuing warrants, should know by this time the various matters which must be covered in reasonable detail if an affidavit is to satisfy the requirements of G. L. c. 276, §§ 1, 2, 2A, 2B, and 2C, as amended or inserted by St. 1964, c. 557, §§ 1–3 (see also amendment of § 2B by St. 1965, c. 384, and of § 2C, by St. 1967, c. 802, § 4). See *Commonwealth* v. *Rossetti,* 349 Mass. 626, 630–634 (pre-1964 search, see fn. 4 at p. 630); *Commonwealth* v. *Mitchell,* 350 Mass. 459, 461–463; *Commonwealth* v. *Colardo,* 351 Mass. 76, 78–79. Affidavits also must satisfy requirements of the Constitution of the United States and decisions of the Supreme Court of the United States. See *Aguilar* v. *Texas,* 378 U. S. 108, 115–116; *Spinelli* v. *United States,* 393 U. S. 410, 413–419.

The italicized language of the affidavit (see fn. 1, *supra*) does not tell what information was communicated to the affiant by the eyewitness; how either the eyewitness or the affiant had any reason to know where the items sought were likely to be found; what investigations had been made and by whom; what opportunity informants, eyewitnesses, and the affiant had to observe or ascertain incidents or facts relevant to probable cause for issuing a search warrant; what relation the items sought bore to the robbery; or why the informants were considered reliable. The affidavit is little more than a disconnected recital of incomplete conclusions. It is apparent from the evidence summarized below that the affiant had far more than sufficient knowledge to justify issuing a search warrant. He, however, has almost completely failed to include that knowledge in the affidavit. It is incumbent upon affiants to make a full presentation of the facts in the affidavit itself (see *Commonwealth* v. *Monosson,* 351 Mass. 327, 328–330) and upon magistrates and clerks engaged in issuing warrants to refuse them when the affi-

davits do not do this. It is the duty of these officials to make real scrutiny of the affidavits presented to them and to insist upon a sufficient statement of the basis of the affiant's knowledge. Deficiencies cannot be cured by testimony about matters stated to the magistrate that do not appear in the affidavit. See the *Monosson* case, *supra*, at p. 330. The affidavit was bad on its face. If it had been established clearly that the items were seized pursuant to the search warrant, there would have been clear error in denying the motions to suppress.

2. On December 8, 1967, on the afternoon of the day when the motions to suppress were denied, trial of the indictments began. During the trial there was evidence, not presented at the hearing of the motions, from Captain Murphy, from Causey himself, and from others. If this evidence, or part of it, had been appropriately summarized in Captain Murphy's affidavit, the affidavit would have been sufficient. As it was, we think that the testimony described below makes plain that there was no reason for any search warrant. From this evidence at the trial, the trial judge in passing on the admissibility in evidence of the gun and the jacket, and the jury, in passing on the merits, would have been warranted in making the following findings and conclusions.

On the night of December 22, 1966, A. L. Turcotte's package store on Worthen Street, Lowell, was robbed by a man carrying a long gun, a twelve gauge shotgun. Before and after the time of the robbery, a man carrying a long gun and wearing a short jacket, variously described as maroon, red, or rust colored, was observed in the vicinity, near a blue Chevrolet automobile with a white top. The operator of a parking lot on Worthen Street on that evening had ordered an automobile with no front license plate out of his parking lot and made a note of the registration number. Later he saw a man, wearing a maroon jacket and holding a shotgun, enter the vehicle and drive off in it. Two witnesses identified Causey as the man they saw on Worthen Street that evening. Captain Murphy went to the package store about 8:45 on the evening of December 22, 1966. He was

given a registration number and checked it (P20–816) through the Registry of Motor Vehicles. He talked with Kevin Graham, who testified at the trial that he had seen a man in a red jacket carrying a shotgun in the vicinity of the package store that evening. With Graham, Captain Murphy and other officers at once made investigations at 21 Monarch Street, Lowell, among other places. A blue or pale green 1958 Chevrolet convertible automobile with a white canvas top and no front plate was standing in front of the house. It had a rear registration plate P20–816. The motor was still warm.

Captain Murphy knocked on the door, identified himself as a police officer, and was admitted by Causey. Over a chair was hanging "a red or maroon jacket." The captain asked if the automobile outside was his. When told by Causey that the automobile was his, the captain warned him of his rights. Graham told Captain Murphy that he recognized Causey as the man he had seen in Worthen Street earlier.

Mrs. Causey testified that Causey had a gun in the parlor closet at 21 Monarch Street. Her husband on December 22, 1966, took it out of the closet to show to Captain Murphy. Causey had come in that evening about nine-thirty. He then was wearing the jacket. Shortly thereafter he went to bed. Captain Murphy came in about 11 P.M. with some other officers. At this time they saw the red jacket and Causey voluntarily showed them the gun.

Causey himself took the stand. He admitted that he owned the shotgun and the jacket and that he had shown the gun to Captain Murphy on December 22. Captain Murphy had taken him to the package store but the manager had not identified him. No arrest was made that night.

On January 10, 1967, Captain Murphy arrested Causey at a liquor store near 21 Monarch Street. Causey asked if he could go to his house, apparently to speak to his wife. When arrested, Causey was wearing the red jacket. It was a cold night and Captain Murphy permitted Causey to keep it until he later "got to a heated place in the [police] station."

When Captain Murphy and Causey arrived at Causey's house the shotgun introduced in evidence was still in the closet. Captain Murphy did not have to search Causey's house for the gun. He "knew it was in the closet." Causey said, "Take it." Captain Murphy took it. Causey himself testified that he "gave it to" Captain Murphy.

In these circumstances, although Captain Murphy had obtained the search warrant and had it in his possession on January 10, it could warrantably be found that knowledge of the gun was obtained on December 22, and that Causey coöperatively gave up the gun to Captain Murphy after his arrest on an arrest warrant. It does not appear that the search warrant was in fact used, although Captain Murphy made return on the warrant that by its use he had obtained the gun and the jacket. It could have been concluded that there was no such reliance upon an invalid warrant as was held to nullify the consent to search in *Bumper* v. *North Carolina,* 391 U. S. 543, 546–550. Accordingly, since the search warrant could be found to have been unnecessary, it is immaterial that the affidavit was inadequate. See *Commonwealth* v. *Blackburn,* 354 Mass. 200, 203. See also *Commonwealth* v. *Sullivan,* 354 Mass. 598, 603.

*Judgments affirmed.*