277 So.2d 359

**Eugene BATSON, alias**

**v.**

**STATE.**

**5 Div. 75.**

Court of Criminal Appeals of Alabama.

May 1, 1973.

James K. Haygood, Jr., Auburn, for appellant.

William J. Baxley, Atty. Gen., and J. Victor Price, Jr., Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Robbery; sentence, life imprisonment.

This is a second appeal; see Batson v. State, 46 Ala.App. 610, 246 So.2d 677.

## I

February 19, 1969, defendant and another entered the Dupriest grocery store on Highway 87 in Lee County. Defendant pulled a pistol on Mrs. Dupriest and demanded money. She took approximately $20 in bills and change from a cash register and put it in a paper sack. The accomplice took the sack and began to leave.

At this point the defendant ordered Mrs. Dupriest to come from behind the counter. As she did he hit her over the head with a crowbar which he had picked up from the floor of the store. When she tried to get up he hit her again with the crowbar. A Coca Cola salesman later found her lying in a pool of blood. She did not regain consciousness for six days.

Thirty minutes before the estimated time of the robbery defendant and his accomplice had stopped at the store of one Mr. Hearn, about three and a half or four miles South of the Dupriest Store. They bought twenty-five cents of gas. Later, after time of the robbery, Hearn saw the same car headed away from the Dupriest store at a high rate of speed. The defendant was driving.

Hearn testified without objection that a customer whom he could not recall by name, but whom he knew, stopped and told him that Mrs. Dupriest had been robbed. (R. 58) Hearn saw that this was about twenty or thirty minutes after he had seen appellant drive away. He was asked, "What did you do after you heard that she had been robbed?" The answer was, "Well, my brother George drove up and I told him to watch the store for me while I went up to Mrs. Dupriest's." Thereupon, Hearn gave the description of the defendant and his accomplice, as well as of the car license, to the officers.

This description was radioed to two Lee County deputy sheriffs who had left Lee County to go to Cobb Memorial County Hospital in Russell County, (Phenix City) to inquire about Mrs. Dupriest's condition.

Getting near the hospital the deputies saw men fitting the suspects' description driving on Opelika Road in Phenix City (i. e., about four miles from Lee County line.) On spotting them the deputies unsuccessfully tried to radio the sheriff of Russell County. They raised the Phenix City police, but the latter were unable to come.

The deputies stopped the car, arrested the suspects, and took them back to Lee County to the Dupriest store where they were identified by Mr. Hearn.

On stopping the suspects in Phenix City the deputies descried a crowbar on the floorboard between the front and back

seat, and a pistol on the floorboard in front of the front seat.

They were outside the car looking through the window. Nothing was put into or taken out of the car. They took the suspects and their car to the Lee County jail.

## II

A trial, over defense objection, the State offered the crowbar and pistol in evidence. The Court sustained the objection. We think this ruling was erroneous under the evidence at the trial of instant concern because there was testimony that showed the bar and pistol were in plain view. What was said in Batson v. State, 46 Ala. App. 610, 246 So.2d 677, related only to the infirmity of a search warrant taken before an officer without statutory authority to issue it.

The error of excluding the bar and the pistol inured to appellant's benefit and he cannot complain of the trial court's ruling.

As to the introduction in evidence of the crowbar there might be some question as to whether it was introduced or whether it was merely exhibited before the jury. Ordinarily it is taken that if something is exhibited before the jury and seen by them then it can be treated as having been introduced in evidence. See Taylor v. State, 249 Ala. 130, 30 So.2d 256(7); Arrick v. Fanning, 35 Ala.App. 409, 47 So.2d 708(7); Long v. State, 39 Ala.App. 384, 101 So.2d 94(2); Freeman v. State, 46 Ala.App. 640, 247 So.2d 682(1).

At all events, in this case, we find witness Chapman being asked the following:

"Q I'd like to show you, Mr. Chapman, a crowbar here marked State's Exhibit 1 and ask you to examine this crowbar.

MR. HAYGOOD: We object to any testimony he might give when he examines it.

THE COURT: Well, you're objecting to it?

MR. HAYGOOD: I'm objecting if he is fixing to testify.

THE COURT: Well, you object to the question?

MR. HAYGOOD: I want to hear it first. I want Mr. Wright to ask the question so that I might have the opportunity to object.

THE COURT: All right. I understand what you mean. All right. Mr. Wright, do that.

"Q Have you examined it, the crowbar?

"A Yes, sir.

"Q Mr. Chapman, state whether or not you have seen that crowbar before.

"A I have.

"Q And whereabouts have you seen it?

"A On the right rear floor board of the '64 white Chevrolet.

"Q How can you tell from your examination of the crowbar that that is the same one that you saw laying in the car?

"A Because I took it out of there myself and scratched my initials on it standing there beside of the car."

It is to be noted that no objection was interposed to the questions and the exhibition of this crowbar. Later (R. 78) the State made the formal motion of offering the crowbar in evidence. At this point defense counsel objected on the ground that there had been no showing of a search warrant to go into the car. The jury was withdrawn and the court heard testimony voir dire.

After a long colloquy the court concluded that the crowbar was inadmissible in evidence and specifically excluded it and the pistol. (R. 83.)

### III

Defendant was advised at least twice of his *Miranda* rights. First, when he was brought back to the Dupriest store; second, when he was interrogated in the Sheriff's department in Opelika. There he read and signed a waiver.

Pre-*Miranda* predicates were observed. After having been told that his accomplice, Vaughn, had given a statement to the officers and after having read that statement the defendant then dictated a statement which was typed up. He made corrections in the typed draft and initialed each correction, and then signed it.

■ The court overruled defense objection to the reception of this inculpatory statement of the defendant. The statement was then read in evidence. (R. 101–106.) When the State rested, defense counsel moved to exclude the State's evidence on the ground that the State had not made out a prima facie case. The motion was overruled. (R. 108.) There was no error in this.

### IV.

■ The appellant's contention that the trial court erred in instructing the jury to pay no attention to the defense of not guilty by reason of insanity was without merit. This defense requires that the defendant prove it clearly to the satisfaction of the jury. Code 1940, T. 15, § 422. In the case at bar there was no evidence offered. Obviously there could not be any satisfaction of the jury since this was an issue on which the defendant had an express burden of proof.

State's brief, p. 15, cites People v. Wright, 41 Ill.2d 170, 242 N.E.2d 180 at p. 182. Also, Acosta v. Beto, D.C., 297 F. Supp. 89, People v. Perry, 271 Cal.App.2d 84, 76 Cal.Rptr. 725, Commonwealth v. Causey, 356 Mass. 125, 248 N.E.2d 249, State v. Williams, 19 Ohio App.2d 234, 150

N.E.2d 907, State v. Dotson, 160 La. 471, 256 So.2d 594.

### V

Upon allocutus by the trial judge we find (R. 119–120) the following:

"* * * Do you have anything, at this time, to say why sentence and judgment should not now be pronounced upon you?

"THE DEFENDANT: Yes, sir. I'm wearing prison clothes and I don't believe that I got my right to a fair and impartial trial due to that fact.

"THE COURT: Well, let the record show he is wearing blue trousers and a blue shirt. You don't have anything on your clothing to indicate that that is prison clothes, do you?

"THE DEFENDANT: Yes, sir, right here, board of correction, 'Alabama Board of Correction.'

"THE COURT: Did any member of this jury see on the back of his trousers there, 'Alabama Board of Correction?' If so, say so. All of you say no? Very well, Its very dim. I hadn't noticed it myself. All right. On the jury verdict of guilty of robbery as charged in the indictment, it is ordered and adjudged by the Court that you are guilty of robbery as charged in the indictment in this case and as punishment you are hereby formally sentenced to the penitentiary of the State of Alabama for and during the term of your natural life. Take charge of him, Mr. Sheriff."

In Clark v. State, 280 Ala. 493, 195 So. 2d 786, we find Mr. Justice Merrill opining:

"Thirdly, the defendant contends that his constitutional rights were violated and he was denied a fair trial because he was dressed in white prison clothing.

"But here all during the morning session on the date of the trial, the defendant and his attorney were in court and the record shows that not one of the jury panel was present. The court noted especially that the preliminary matters took place when not a single juror was in the courtroom. Furthermore, no request was made that the defendant be dressed in different clothes during the time the jury was being selected. It was not until the jury had been chosen and the defendant had made his attempt to escape that any objection to his garb was made to the court.

"We hold that the defendant waited too late to move for a mistrial because of his clothing. If he seriously believed he could not get a fair trial while dressed in prison clothes, a motion to that effect should have been presented to the court prior to the time the jury panel was brought into the courtroom."

See also Hill v. State, 251 Ark. 370, 472 S.W.2d 722.

There is some authority which indicates that the State as the custodian of the accused has the duty to see that when he is brought into court he should be clothed in the garb of innocence. See Watt v. Page, 10 Cir., 452 F.2d 1174—particularly discussing Hernandez v. Beto, 5 Cir., 443 F.2d 634.

On the other hand some writers have mentioned the possible advantage in arguing to the jury that the defendant is "here in jail clothes and he has suffered enough punishment because (say) neither he nor his family could raise bail." We pretermit discussing any putative distinction between jail and penitentiary clothes.

Moreover, on hearing the Fifth Circuit in Hernandez v. Beto, supra, the court said, "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error."

All things considered we believe that the best rounded exposition of the "cloak of innocence" problem is found in Ex parte Kelly, Tex.Cr.App., 484 S.W.2d 773, from which we quote in part:

"The contention of the applicant is that he was tried in jail clothes and this infringed on his right to be presumed innocent. He was convicted in 1969 for the offense of robbery. His punishment was assessed by the court at thirty-five years. On appeal, this Court affirmed the conviction in Kelly v. State, Tex.Cr. App., 471 S.W.2d 65 (1971).

"The applicant now relies upon Hernandez v. Beto, 443 F.2d 634, 637 (April 15, 1971), where the Court of Appeals for the Fifth Circuit granted relief because Hernandez had been tried in jail clothes. The attorney in that case testified that he did not object to Hernandez being tried in jail clothing because he did not think it would do any good to object.

"In the present case, the convicting court held a hearing on the application for habeas corpus. Trial counsel testified that he did not object because he thought such an objection would be overruled. Neither counsel nor the applicant objected that he was tried while wearing jail clothing.

"Robert R. Scott, an attorney in private practice at the time of the hearing, testified that he was the prosecutor in the court presided over by Honorable E. B. Duggan when the applicant was convicted. Scott also testified that during the two and one-half years he had prosecuted, Judge Duggan, upon request, would arrange to have any defendant tried in civilian clothes. Further, he testified that the reputation of the Judge prior to the decision in Hernandez v. Beto, supra, was that he would always allow any defendant who so desired to be tried in civilian clothes. Scott also testified that on one occasion before the trial of Donald Lee Hammons, Judge

Duggan furnished one of his own suits to Hammons who wore it during the trial.

"Similar testimony was given by Fred Fisher, who was bailiff in Judge Duggan's court at the time of applicant's trial in 1969.

"Ephraim v. State, Tex.Cr.App., 471 S.W.2d 798, was reversed by this Court because the defendant objected to being tried before the jury in jail clothing. In Hernandez v. Beto, supra, that Court stated:

" 'A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error.'

"In Garcia v. Beto, 452 F.2d 655 (5th Cir. 1971), it was noted that often as a matter of strategy one wants to be tried in jail clothing. This was also recognized in Williams v. State, Tex.Cr.App., 477 S.W.2d 24, 27, where this court held that absent an objection, it is presumed that one was willing to go to trial in jail clothing. We agree with the opinion of the Fifth Circuit that there must be an objection before the matter can be reviewed."

Like that court and on authority of *Clark*, supra, we hold that absent an objection, it will be presumed that the accused was willing to go to trial in prison clothes. Also we note that presently Alabama penitentiary prisoners wear blue shirts and blue denim trousers with—as the record here shows—a stencil on the seat indicating the Board of Corrections. Aside from the stencil the style is not distinguishable from that worn by many young people outside prison.

We have carefully considered the whole record under Code 1940, T. 15, § 389 and conclude that the judgment below is due to be

Affirmed.

All the Judges concur.