COMMONWEALTH *vs.* JAMES D. KELLY
(and two companion cases[1]).

Hampden.    March 12, 1973. — August 23, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Evidence,* Photograph, Corroborative evidence.    *Search and Seizure.*
*Identification.    Practice, Criminal,* Voir dire, Accessory, Intent.

At the trial of an indictment for armed robbery of a bank, the admission
of a photograph of the defendant seated at a table on which were
packages of money was not error where the defendant failed in his
burden of proving that the photograph was obtained during an illegal
search and seizure [443-444]; and although the time of the taking of
the photograph could not be fixed as before or after the robbery, it was
admissible as having some tendency to implicate the defendant when
considered with other evidence in the case of which it was corrobora-
tive. [444]

There was no error in an in-court identification of the defendant in a
criminal case by a witness who might have seen a suggestive
photograph of the defendant prior to trial where the defendant did not
call the witness at the hearing of a motion to suppress the photograph
or otherwise develop at such hearing whether the witness had in fact
seen the photograph and, if so, its effect upon the witness [444-445];
and there was no abuse of discretion at the trial in denial of a voir dire
with respect to the identification [445-446].

No error appeared at a criminal trial in the introduction of two "mug
shots" of the defendant showing him clean shaven where, although
only one was necessary for the purpose of impeaching defense
testimony that the defendant always wore a mustache, the defend-
ant's objection to their introduction was not on that basis, no
objection to their admissibility was made on the ground of remote-
ness, there was no motion to strike, and any prejudice was minimal in
view of testimony previously elicited by the defense from a witness
that she had made an identification of the defendant from "mug
shots". [446-447]

At the trial of an indictment for being an accessory after the fact to

---

[1] Both companion cases are against Sidney Foulks.

armed robbery of a bank, evidence merely that seven weeks after the robbery the defendant knew that he possessed a gun used in it, and that he then said the gun was "hot" and he intended to get rid of it was insufficient to establish that the defendant had the specific intent required by G. L. c. 274, § 4, that the principal felon should "avoid or escape detention, arrest, trial or punishment," and did not warrant a verdict of guilty. [447-448]

INDICTMENTS found and returned in the Superior Court on September 15, 1971.

The cases were tried before *Tisdale,* J.

*Arthur D. Serota* for the defendant Kelly.

*Jay M. Forgotson* for the defendant Foulks.

*John McDonough,* Assistant District Attorney (*William Teahan, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

GOODMAN, J.    The defendant Kelly was convicted of armed robbery and sentenced to 12 to 18 years imprisonment. The defendant Foulks was convicted at the same trial on two indictments charging him with being an accessory after the fact to Kelly and one Ola Mae Smith[2], respectively. The cases are here under G. L. c. 278, §§ 33A-33G.[3]

These cases arise out of a bank robbery of the Union Federal Savings and Loan Association at the Eastfield Mall in Springfield on July 9, 1971, at about two o'clock in the afternoon; about $2,700 was taken. From the testimony it appears that at that time two men entered the bank. One was armed with a long barreled shotgun or rifle and stood by the door.[4] The other came behind the counter and ordered the tellers to put the money in a bag he was holding.

---

[2] She was tried together with Kelly and Foulks as a principal and also found guilty. No appeal on her behalf is before us.

[3] The defendant Foulks originally filed a timely bill of exceptions and thereafter moved before a single justice of the Supreme Judicial Court to join in Kelly's appeal under G. L. c. 278, §§ 33A-33G, which had been entered in the Supreme Judicial Court. The defendant's motion was allowed, and we construe this as permission to argue his exceptions as though incorporated in assignments of error. All parties have treated the case on this footing.

[4] He was not tried with the others; he was deceased at the time of trial.

One of the tellers, Linda Welzyn, identified him as the defendant Kelly. One William Shays testified that at about 2:20 or 2:30 P.M. he saw two men drive into the parking lot at the Eastfield Mall in an automobile, which later turned out to have been stolen. They left the automobile and drove off in a waiting station wagon operated by a woman.[5] He identified one of the men as Kelly. The Commonwealth also introduced a photograph of the defendant Kelly and the defendant Foulks sitting in an apartment, rented by Kelly and occupied by Kelly and Foulks, in front of a coffee table on which were a number of packages of currency.

## I. *The defendant Kelly.*

Kelly attacks: (a) the introduction in evidence of and the failure to suppress the photograph, (b) the identification by Mrs. Welzyn, and (c) the introduction by the prosecuting attorney of "mug shots" of the defendant. The contentions are without merit.

(a) *The photograph.* The motion to suppress the photograph was based on testimony at a pre-trial hearing by Kelly and Foulks' sister that it was kept in a manila envelope in a dresser drawer and that two detectives came to the apartment in the morning of August 21, 1971, questioned Foulks' sister and "looked around in the dresser." She further testified that on August 25 at about 2:30 or 3:00 A.M. four armed policemen "barged in" and went through the drawers. At no time did they produce a search warrant. She left the apartment and returned on August 28 to take her possessions, including the manila envelope.

The court denied the motion, making no findings. The Supreme Judicial Court has indicated the desirability of findings of fact when a motion to suppress is denied (see *Commonwealth* v. *Frank,* 357 Mass. 250 [1970]) and has at times instructed the trial judge to make such findings while the case is pending on appeal. *Commonwealth* v. *Mendes,*

---

[5] Ola Mae Smith was convicted on evidence that she drove the station wagon.

361 Mass. 507, 511 (1972). In this case it would be pointless since our examination of the testimony convinces us that the defendant has not sustained his ultimate burden of proving that the photograph was taken during these searches — quite apart from the testimony at trial by the landlord that his son found the picture on cleaning up the apartment in September after it had been vacated. See *Commonwealth* v. *Causey,* 356 Mass. 125, 128-130 (1969).

That the photograph was an accurate representation was not questioned; defense witnesses testified that it was taken as a joke some time before the robbery. The credibility of this testimony was a matter for the jury. The prosecution could obviously not fix a time when the photograph was taken, whether before or after the robbery. However, the photograph showed strapped money on the coffee table and strapped money had been taken in the robbery. And further "there were strong accompanying circumstances of guilt of an independent character." *Commonwealth* v. *Coyne,* 228 Mass. 269, 272 (1917). The photograph was obviously not enough to prove criminal conduct. But a robbery having been proved, and evidence having been introduced identifying Kelly as one of the robbers, the jury could properly consider the photograph as having some tendency to point to Kelly's implication. "Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the conclusion which would be drawn from the other facts." *Commonwealth* v. *Mulrey,* 170 Mass. 103, 110-111 (1898) (Holmes, J.). A bank robbery of strapped money is not such an everyday occurrence as to preclude the jury as a matter of law from finding some corroborative significance in such a photograph. See *Commonwealth* v. *Jones,* 360 Mass. 498, 501, fn. 2 (1971).

(b) *Mrs. Welzyn's identification.* At the hearing on the motion to suppress, Mrs. Cook, a teller, was interrogated by the prosecuting attorney in connection with a pre-trial conference in the district attorney's office held within two weeks prior to trial and seven months after the robbery. She was shown pictures of Kelly and testified that the photo-

Commonwealth v. Kelly.

graph of the defendants described above was also on the table, off to the side somewhere. In the course of her testimony she said that Mrs. Welzyn was also at the pre-trial conference and had seen the photograph.[6]

Defense counsel made no attempt to inquire from Mrs. Cook beyond the testimony elicited by the prosecuting attorney set out in fn. 6. He did not call Mrs. Welzyn or in any way attempt to develop whether she had in fact noticed the photograph, and, if she had, how, if at all, it had affected her. The pre-trial hearing was concerned almost exclusively with the identification by Mrs. Cook who, as it turned out, did not identify the defendant at the trial in any event.

The defendant also argues that he should have been given a voir dire prior to Mrs. Welzyn's in-court identi-fication. This is based on an exception taken after a bench conference which followed the prosecuting attorney's ques-tion whether she recognized anyone and which was appar-ently not recorded by the stenographer. There was nothing to indicate that there was any objection that the bench conference was not taken[7] and there was no attempt thereafter to put on the record the substance of the bench conference which might have been the basis for the ex-ception. In any event, the trial judge was well within his discretion in denying a voir dire. There was no surprise, and the defendant had already had a hearing on his motion to

---

[6] The entire testimony in this connection was as follows:

| Q. (by the prosecuting attorney) | Now, do you know from your own knowledge whether or not anybody else saw this picture? |
|---|---|
| THE COURT. | While you were at the conference. |
| A. | Mrs. Welzyn. |
| Q. | And who is Mrs. Welzyn? |
| A. | The other teller at the Union Federal. |
| Q. | Was she an eye witness in addition? |
| A. | Yes, she was. |

[7] The Regulations For Court Stenographers issued by the Superior Court then read: "9. In each case the stenographer shall take ... (d) All conferences at the bench, unless the presiding justice otherwise orders." Presently the Duties Of Reporters reads: "8. In each case the reporter shall take ... (d) all conferences at the bench, if and when requested by the presiding justice."

suppress. Rule 101B of the Superior Court (1954). We observe that in any event Mrs. Welzyn had identified the defendant from photographs shortly after the robbery and long before the pre-trial conference of which the defendant complains. She had also had ample opportunity to observe him at the robbery.

(c) *The mug shots.* The two mug shots — one side view and one front view — to the introduction of which the defendant objects, showed the defendant clean shaven and were offered by the prosecuting attorney to impeach the testimony of the defendant's father that the defendant always wore a moustache. (Mrs. Welzyn had testified that the robber she had identified as Kelly was clean shaven.)

In *Commonwealth* v. *Gerald,* 356 Mass. 386, 388 (1969), the Supreme Judicial Court warned, "There is risk that any use in evidence of photographs of the double type ordinarily used in police identification files will suggest to the jury that the defendant may have a prior criminal record. . . . [U]se [of such photographs] in evidence was undesirable." See *Barnes* v. *United States,* 365 F. 2d 509 (D. C. Cir. 1966); *Commonwealth* v. *Nassar,* 351 Mass. 37, 42-43 (1966); *Blue* v. *State,* 250 Ind. 249 (1968). See also cases collected in the annotation in 30 A. L. R. 3d 908. The circumstances may be such that the introduction of both views is necessary, e.g., in connection with an identification by a witness (see *Commonwealth* v. *Nassar,* 354 Mass. 249, 261 [1968]), but in this case the point that the defendant had at some time been without a moustache could have been made by the introduction of only one of the mug shots. However, defense counsel made no such suggestion, and his objection to both photographs does not appear to have been made on this basis. *Commonwealth* v. *McLellan,* 351 Mass. 335 (1966).

Defense counsel in this case elicited testimony that the mug shots depicted the defendant when he was much younger and long before the present events. However, no motion to strike the photographs was thereupon made, nor had there been any attempt to argue the remoteness of the mug shots when the court ruled on their admissibility.

Accordingly, we need not decide whether the admission of both photographs, if proved to have been taken at a time remote from the robbery, would have been error. In any event, they were minimally prejudicial, if at all, since defense counsel had himself previously elicited from Mrs. Welzyn testimony before the jury that she had made an identification from mug shots soon after the robbery.

## II.  The defendant Foulks.

Foulks attacks his conviction as an accessory after the fact and contends that his motion for directed verdicts should have been allowed because the evidence was insufficient to convict. G. L. c. 274, § 4, sets out the elements of the crime and provides: "Whoever, after the commission of a felony . . . assists the principal felon . . . or gives such offender any other aid, knowing that he has committed a felony . . . *with intent that he shall avoid or escape detention, arrest, trial or punishment,* shall be an accessory after the fact." We need not decide whether the jury could have found from the photograph of Foulks and Kelly, discussed above, that Foulks knew of the robbery. Such knowledge, of course, would not in any event be sufficient for a conviction. See *Commonwealth* v. *Perry,* 357 Mass. 149 (1970). But the only additional evidence was contained in a written statement to the police given by Mrs. Weathersby, Kelly's sister. From this statement the jury could have found that the day after Kelly was arrested on August 22, 1971, and about seven weeks after the robbery, she heard Foulks tell his sister that the gun used in the robbery was in the trunk of his car, that it was "hot" and that he intended to get rid of it.[8]

We do not believe that this "afforded sufficient basis for an inference by the jury of the final essential element of the offence, namely, that the . . . [possession of the gun]

---

[8] Mrs. Weathersby, who had been called by the prosecuting attorney, denied on the stand that Foulks had said that the gun came from the robbery. Her testimony to the contents of the written statement was, at best, admissible for impeachment purposes. However, there was no attempt to limit it. Cf. *Commonwealth* v. *LaFrance,* 361 Mass. 53 (1972).

was ... with the intent that ... [the participants] would avoid apprehension by the police." *Commonwealth* v. *Holiday,* 349 Mass. 126, 129 (1965). Perhaps it could be found that the probable consequences of Foulks' possession were to impede the prosecution — though that is not clear. However, the intent required to sustain a conviction for the crime of accessory after the fact, like that for accessory before the fact, "ha[s] nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct." *United States* v. *Peoni,* 100 F. 2d 401, 402 (2nd Cir. 1938), quoted in *Commonwealth* v. *Stout,* 356 Mass. 237, 241 (1969). See *Commonwealth* v. *Boris,* 317 Mass. 309, 315-317 (1944). The offense requires the "purpose to hinder the apprehension, prosecution, conviction, or punishment of another for crime." Model Penal Code, § 242.3 (Proposed Official Draft). See also *Commonwealth* v. *Spezzaro,* 250 Mass. 454, 458 (1925); *Commonwealth* v. *Wood,* 302 Mass. 265, 271 (1939); *Commonwealth* v. *Tilley,* 327 Mass. 540, 545-546 (1951); *Commonwealth* v. *Holiday,* 349 Mass. 126, 128 (1965); *State* v. *Nicholson,* 221 S. C. 399 (1952); *State* v. *Clifford,* 263 Ore. 436 (1972); *State* v. *Young,* 7 Ohio App. 2d 194 (1966); LaFave and Scott, Criminal Law § 66, pp. 522, 525 (1972).

The crime has evolved from one in which the offender is considered in some sense an accomplice in the original crime into an independent crime the gravamen of which is the obstruction of justice. See discussion, Model Penal Code, § 208.32, p. 195 (Tent. Draft no. 9). Thus the Model Penal Code (Proposed Official Draft) classifies the crime of being an accessory after the fact in article 242 entitled, "Obstructing Governmental Operations; Escape," and the Proposed Criminal Code for Massachusetts places it among "Offenses Against Public Justice." See *United States* v. *Barlow,* 470 F. 2d 1245, 1252-1253 (D. C. Cir. 1972) ("The gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he has committed the crime.")

"Where, as here, a specific intent is an element of the

crime charged, that intent must be proved." *Commonwealth* v. *Carter,* 306 Mass. 141, 149 (1940). The specific intent to obstruct justice may of course not be susceptible of proof by direct evidence. "In that event resort must be had, and frequently is had, to proof by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Holiday,* 349 Mass. 126, 128 (1965). Knowledge of a crime and an act such as hiding a gun which could reasonably assist the principal ordinarily presents a jury question whether the act was done with a purpose to obstruct justice. *Self* v. *People,* 167 Col. 292 (1968). *McClain* v. *State,* 10 Md. App. 106 (1970). See *People* v. *Galbo,* 218 N. Y. 283, 290 (1916). However, where an inference is "unwarranted because too remote, according to the ordinary course of events" (*Commonwealth* v. *Doherty,* 137 Mass. 245, 247 [1884]) the case is taken from the jury. We believe that this is such a case. An inference of intent to obstruct justice would, we believe, on the evidence of this case be the result of speculation. Neither the possession of the gun, albeit the defendant knew it came from the robbery, nor his statement that he was going to get rid of it, separately or together, gives rise to anything more than conjecture. There is no indication when in this seven-week period he obtained possession or how he obtained possession or what prompted him to take possession. See *Commonwealth* v. *Croft,* 345 Mass. 143, 144 (1962), in which the prosecution "show[ed] merely the bare possession of heroin coupled with the defendant's admission" that he had stopped using it recently. The Supreme Judicial Court held that the specific intent to sell was conjectural. See also *Commonwealth* v. *Ellis,* 356 Mass. 574, 579 (1970); *Commonwealth* v. *Doherty,* 353 Mass. 197, 204 (1967). Thus, too, while possession of stolen property may be sufficient to convict of larceny, the possession must be recent. Wigmore, Evidence (3d ed.) § 2513. *People* v. *Galbo,* 218 N. Y. 283, 290 (1916). Cf. *Commonwealth* v. *Kelley,* 333 Mass. 191, 194 (1955), in which a conviction for receiving stolen money was sustained though there was a lapse of fifty-four days between the robbery and the date of

the defendant's proved possession. The court pointed out that "[t]here is much more here than mere unexplained possession of the stolen money" and therefore refused to accept the argument that this lapse of time was as a matter of law too long to permit the jury to draw an inference of guilty knowledge. See also *Commonwealth* v. *Ross,* 339 Mass. 428, 431 (1959), in which the court said, "In cases where the evidence is circumstantial and recent possession is relied on, several inferences are possible. . . . If the inferences of theft and receiving are equally probable the issue is conjectural." In such a case a verdict would be directed unless, as in the *Ross* case, there was other testimony which, together with the possession, pointed to one conclusion rather than the other. Here, however, there were no additional circumstances coloring the possession sufficient to permit an inference of an intent to obstruct justice. Foulks' expressed desire, after Kelly's arrest, to get rid of the gun because it was "hot" would seem to be at least as likely to arise from a concern for himself as from an intent to help the already arrested Kelly. *Commonwealth* v. *Fancy,* 349 Mass. 196 (1965). *Commonwealth* v. *Spina, post,* 805 (1973).

Accordingly, the judgments against Foulks for being an accessory after the fact to Kelly and Ola Mae Smith,[9] respectively, are reversed, the verdicts are set aside, and judgment is to be entered for Foulks on each indictment. The judgment against Kelly is affirmed.

*So ordered.*

---

[9] No connection was shown between Foulks and Ola Mae Smith.