Kaplan, Mitchell H., J.
A Norfolk County grand jury returned indictments against the defendant, Carl Clipp, for unlawfully carrying a firearm, being an accessoiy after the fact with respect to co-defendant Michael Blanchard’s alleged unlawful carrying of a firearm, and being an accessory after the fact with respect to Blanchard’s alleged murder of Stephen Erving. The case is before the court on the defendant’s *31 motion to dismiss the two indictments charging the defendant with being an accessoiy after the fact to crimes for which Blanchard was indicted under the rule announced in Commonwealth v. McCarthy, 385 Mass. 160 (1982). For the following reasons, the motion is denied, in part, and allowed, in part.
FACTS
As relevant to the defendant’s motion, the grand jury heard the following evidence. On the night of March 15, 2010, the defendant drove to Blanchard’s apartment. He was driving his mother’s green van. At some point, the defendant agreed to drive Blanchard to various locations at which Blanchard would sell Percocet pills to individuals. The defendant was himself to receive some pills in return for providing this service. At some time in the early morning of March 16, 2010, after several stops during which Blanchard apparently sold drugs, the defendant and Blanchard drove to Monk Street in Stoughton and parked near Governor’s pub. Blanchard exited the van and returned ten to fifteen minutes later. During this period, Blanchard walked to 115 Lincoln Street, Erving’s residence. He climbed up on a chair that he placed below a window and fired several rounds into Erving’s bedroom. At least one of the bullets struck Erving, killing him. Blanchard returned to the van and the defendant then drove back to Blanchard’s apartment dropping him off. The defendant then drove home.
Upon arriving home the defendant cleaned out the van and found the gun and ammunition. He took it with him into his house (where he lived with his mother). Phone records show that a call was placed from the defendant’s home to Blanchard at 4:38 AM. The call lasted only twenty or so seconds and there was no evidence as to whether it was answered by a person or went to voicemail.
The following morning, outside his home, the defendant was confronted by Stoughton police officers who told him that they were going to secure the van while they obtained a warrant to search it. The officers would not tell the defendant what they were investigating. They asked him if he would go to the police station to be interviewed. He said that he would, but asked if he could stop at Dunkin’ Donuts on the way. He was told that would be fine. The defendant then retrieved the gun and ammunition from his house and hid them on his person. He left his house on a motorcycle and threw the gun and ammunition into a nearby pond before continuing on to the police station.
At the station, the defendant first denied any knowledge of the gun and ammunition, but later admitted that he had found the gun in the van, taken into his house, and then thrown it into the pond when he encountered the police at his home conducting an investigation, because he was “scared to death.” After admitting this, he assisted the police in recovering the gun from the pond. The defendant continued to maintain that he was unaware that Blanchard had brought the gun with him the previous night, until he found it while cleaning out the van. He asserted that he had no idea that Blanchard had gone to Erving’s apartment or fired into it.
During police interrogation, Blanchard admitted walking to Erving’s apartment from where the van was parked on Monk Street and firing into his bedroom, but maintained that he had no knowledge that he had actually shot Erving, let alone killed him. When questioned concerning the whereabouts of the gun, Blanchard eventually told the police that it was in the van. He also said that the defendant knew it was there, but said nothing concerning when the defendant learned of its existence, i.e., whether the defendant knew it was there while he was driving around with the defendant or the defendant found it while cleaning the van (which might have prompted the 4:38 AM call from the defendant to Blanchard). He said nothing suggesting that the defendant knew that he had fired into Erving’s bedroom.
The grand juiy heard no evidence concerning the distance from the spot that the defendant parked the van on Monk Street to 115 Lincoln Street, where the shots were fired, or whether someone sitting in the van could reasonably be expected to see Blanchard at the site of the murder or hear shots fired at that location.
DISCUSSION
The court “must decide whether the grand juiy were presented with sufficient evidence to support a finding of probable cause to arrest the defendant for [being an accessoiy after the fact to Blanchard’s alleged illegal carrying of a firearm and murder of Erving].” Commonwealth v. Roman, 414 Mass. 642, 643 (1993). “The evidence before the grand jury must consist of reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense.” Id. The evidence presented to the grand juiy need not be sufficient to “warrant! ] a finding of the defendant’s guilt beyond a reasonable doubt. [The grand juiy] needfs] only evidence establishing probable cause to arrest.” Id. at 647.
The elements of the crime of being an accessory after the fact are set out in G.L.c. 274, §4: “Whoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon ... , or gives such offender any other aid, knowing that he had committed a felony . . . , with the intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessoiy after the fact, ...”
The defendant first argues that both of the acces-soiy after the fact indictments returned against him must be dismissed because the grand jury heard insufficient evidence to support probable cause to believe that he acted “with the intent that [Blanchard] shall avoid or escape detention , arrest, trial or punishment.” Id. The “intent” required by the stature is *32 the specific intent to aid the principal felon and thereby to obstruct justice. See Commonwealth v. Kelly, 1 Mass.App.Ct. 441, 449-50 (1973). The Commonwealth maintains that the defendant’s concealing the gun and ammunition and later throwing them in the pond are acts from which the grand jury could infer the requisite intent. The defendant contends that the only inference that the grand jury could draw from the evidence presented to it was that the defendant hid the gun and ammunition to protect himself. According to the defendant, he was “scared to death” when he went outside the day following his drive with Blanchard and was told that the police were securing the van to search it in connection with an investigation of an unidentified crime. While the defendant may well have been acting out of self interest and not solely to protect Blanchard, the grand jury could reasonably infer that he also intended to aid Blanchard. Chapter 274, §4 does not require that the defendant’s act be solely intended to aid the primary felon. A dual motive to protect oneself and the primary felon will support a conviction. See Commonwealth v. Holmsey, 6 Mass.App.Ct. 894, 895 (1974). The defendant’s motion to dismiss the indictment charging him with being an accessory after the fact with respect to Blanchard’s illegal carrying a firearm is, therefore, denied.
The defendant also seeks to dismiss the indictment charging him with being an accessory after the fact to Blanchard’s murder charge on the grounds that the grand jury heard insufficient evidence to find that there was probable cause to believe that the defendant knew that Blanchard had murdered Erving. This presents a much closer question for the court’s consideration.
The Commonwealth argues that evidence that the defendant threw the gun and ammunition in the pond is sufficient for the grand jury to infer knowledge of the murder, as well as an intent to protect Blanchard. The court disagrees. The Commonwealth contends that cases such as Kelly and Commonwealth v. Sims, 41 Mass.App.Ct. 902 (1996), stand for the proposition that the act of hiding a weapon is sufficient to infer both the elements of knowledge of the crime, as well as an intent to aid the felon. They do not. In Kelly, the Appeals Court stated: “Knowledge of a crime and an act such as hiding a gun which could reasonably assist the principal ordinarily presents a jury question whether the act was done with a purpose to obstruct justice.” Kelly, 1 Mass.App.Ct. at 449. In Sims, the Appeals Court found that the primary felon told the defendant that she had shot and killed someone and the defendant then asked her to give him the gun to hold. Again, there was no question that the defendant knew of the murder, and the Court found that the act of asking to hold the gun could support a finding of intent to aid the murderer. Neither of these cases are instructive with respect to the nature or quantum of trustworthy evidence from which knowledge of a crime could be inferred.
Indeed, it seems clear that whether a reasonable inference can be drawn from other evidence that there was probable cause to believe that this, or any defendant, knew that someone had committed a certain crime cannot be determined in a formulaic manner, but rather requires a case-by-case review of the evidence actually presented which might support the inference. There may be some circumstances in which the act of throwing away a gun could support a finding that the defendant probably knew of the primary felon’s crime. This is not one of them. Here the defendant had good reason to be afraid that his possession of the gun could implicate him in criminal conduct. He admittedly assisted the defendant in drug deals the previous night. This is also not a case in which there is evidence that the defendant voluntarily agreed to conceal a weapon for another. The only evidence that the grand juiy received concerning the manner in which the defendant came into possession of the weapon was that he discovered it in the van.
Moreover, it is not enough that the defendant knew that Blanchard committed some crime with the gun on the evening of the 15th or early morning of the 16th. The defendant was indicted for aiding Blanchard to avoid punishment for committing “murder.” “(KJnowledge of the particular felony which has occurred is an element of the crime of being an accessory after the fact which must be proved beyond a reasonable doubt. That is to say, one charged as such an accessory must be shown to have been aware, by his observations or by information transmitted to him, of the substantial facts of the felonious crime.” Commonwealth v. Devlin, 366 Mass. 132, 135-36 (1974). In this case, an element of the crime for which the defendant was indicted was that he knew that Blanchard had committed the murder. The grand jury was presented with no evidence that the defendant was present at the scene of the murder and no evidence that Blanchard said anything to the defendant concerning the murder. There was also no evidence presented to the grand jury that the location where the defendant parked the car on Monk Street was so proximate to where the shooting occurred that it could reasonably be inferred that the defendant likely saw Blanchard fire the gun or at least heard the shots.[1] The fact that the defendant was willing to drive Blanchard to drug deals in return for a few Percocet pills does not support a reasonable inference that he knew that Blanchard shot Erving when he left the van for ten to fifteen minutes.
While there was adequate evidence presented from which the grand jury could reasonably find that there was probable cause to believe that the defendant was an accessory after the fact to Blanchard’s illegally carrying a firearm, or perhaps a drug-related crime involving a firearm, there was inadequate evidence for it to believe that the defendant knew that Blanchard had murdered Erving.
*33 ORDER
For the foregoing reasons, the motion to dismiss is DENIED as to indictment 002 charging the defendant with a violation of G.L.c. 274, §4 with respect to Blanchard’s illegal carrying of a firearm and ALLOWED as to indictment 003 charging a violation of this §4 with respect to Blanchard’s murder of Erving. Indictment 003 is, accordingly, dismissed.

At oral argument, the Commonwealth pointed out that the only evidence that Blanchard was gone from the van for ten to fifteen minutes was the police officer’s recounting of his interview with the defendant and the grand jury could have concluded that the defendant was lying. Perhaps, but the defendant did not testify before the grand jury, and the officer who described the defendant’s statements to him did not suggest that the defendant was not believable on this point. However, more fundamentally, the Commonwealth apparently offered no evidence to the grand jury suggesting that the distance from the van to 115 Lincoln was such that the grand jury could infer that defendant saw the shots fired or heard them or suggesting some other reason that it should not credit the statement that Blanchard was gone for ten or fifteen minutes.