COMMONWEALTH *vs.* TIMOTHY HOWARD.

Suffolk.     October 14, 1975. — July 23, 1976.

Present: HALE, C.J., GOODMAN, & ARMSTRONG, JJ.

*Practice, Criminal,* Motion to suppress, Findings by judge, Continuance. *Constitutional Law,* Waiver of constitutional rights, Admissions and confessions. *Waiver. Identification.*

In reviewing a judge's disposition of a motion to suppress in a criminal case, this court was not limited to the testimony adduced at the original voir dire but could consider the entire record, including a second voir dire following remand by this court for a new evidentiary hearing on the motion. [478-483]

At a criminal trial, the judge did not err in permitting the introduction of a "mug shot" from which the victim had identified the defendant the day after the offense. [483]

A judge in a criminal case did not abuse his discretion in denying the defendant's motion for a brief continuance in the midst of the trial to give him an opportunity to bring in additional witnesses where seven months had elapsed between the defendant's arrest and his trial and where the defense counsel gave no indication as to whether he had interviewed the prospective witnesses or whether they would have corroborated the defendant's story. [483-484]

INDICTMENTS found and returned in the Superior Court on May 14, 1974.

A pre-trial motion to suppress evidence was heard by *Roy,* J., and the cases were tried before him.

*Margaret D. McGaughey* for the defendant.

*J. Kevin Leary,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from convictions on two indictments, one charging that he entered a dwelling house being armed and while therein committed an assault with intent to rob, and one charging him with robbery while armed. We summarize the evidence and procedure as they bear on the defendant's assignments of error.

On April 11, 1974, at about noontime, Joseph Watson, seventy-five years old, was returning to his apartment in the Cathedral Housing Project in Boston and, while unlocking the door, was struck on the head and dragged into the apartment. His assailant ransacked the apartment and left with about $85. The police were called; the victim gave them a general description of the robber and told them that he wore a white cap and white jacket.

As the police were leaving the victim's apartment (after questioning him for about ten minutes) they saw the defendant, who was known to one of them, wearing a white cap and jacket. The officer (Officer Lowell) called to the defendant, but he ran and disappeared into one of the buildings in the project. The officers searched the stair landings and roofs of that building and the adjacent one for about twenty to twenty-five minutes. Officer Lowell then went to the apartment in which the defendant lived, also in the project, and spoke to the defendant's mother, who gave him a white cap and jacket. The next morning the officer returned to the victim's apartment and showed him the cap and jacket, which he recognized. The officer also showed him thirteen pictures of the "mug shot" type, each with a side and front view of a different individual. The victim picked out the defendant's picture. The police thereupon arrested the defendant and took him to the police station, where he was questioned and made incriminating statements.[1]

---

[1] Officer Hayden, who interrogated the defendant at the station, testified that he told him: "I robbed an old man at the Project yesterday. I don't know who he is, and I don't know how much I got" and that, "I found a piece of hose in the apartment, and I hit him with that."

The defendant's motion to suppress the statements was denied, and they were allowed in evidence. The defendant saved exceptions to (1) the denial of his motion to suppress, (2) the admission in evidence of the "mug shot" of the defendant which the victim had selected, and (3) the denial of his motion for a continuance made during the trial. He filed assignments of error based on these exceptions.[2]

1. *The motion to suppress.* At the pre-trial hearing of the defendant's motion to suppress the defendant's counsel called Officer Hayden, who had questioned the defendant after his arrest. In reply to the question, "What rights did you inform him of?" the officer replied as set out in the margin.[3] The prosecuting attorney did not cross-examine. The trial judge denied the motion; he made oral findings which incorporated the substance of Officer Hayden's testimony and concluded "beyond a reasonable doubt that the defendant made a knowing and voluntary waiver of his rights to have an attorney present during the questioning and that he fully understood his rights."

On initial consideration we had some question whether this sparse testimony warranted the trial judge's conclu-

---

[2] On appeal the defendant also attacks the validity of the arrest, the introduction of the white cap and jacket in evidence, and the photographic identification by the victim. However, no such attack was made at trial; there was no indication of any objections as to these matters by way of a motion to suppress or otherwise. No factual record was made directed to these belated claims, and we do not consider them. See *Commonwealth* v. *Leavy,* 369 Mass. 963 (1976); *Commonwealth* v. *Cooper, post,* 782 (1976).

[3] "As soon as I started talking to him, I passed him this card and told him to read both sides of the card. He took the card from me and he began reading it . . . . He says, 'Is this about having a lawyer, and all that other shit?' I said, 'Yes, it is.' He said, 'I don't want a lawyer here.' I said, 'But I have to understand from you whether you understand what you read or not.' He said, 'Yes, I understand it.' "

The defendant's counsel also elicited from Officer Hayden that the defendant was then seventeen years old and that neither the defendant's parents nor counsel was present. The questioning occurred in the presence of three or four other officers. The so called Miranda warnings were read into the record from the card at the suggestion of the trial judge.

Commonwealth *v.* Howard.

sion.[4] The evidence did not make clear that the defendant had read the entire card, and we were in doubt whether a finding could properly have been made that the defendant's outburst was a knowing and intelligent waiver (see *Commonwealth* v. *Hosey,* 368 Mass. 571, 575-576, 578 [1975]). Once the defendant, who had the burden of going forward, had shown that the police had elicited statements from the defendant while he was in custody, there arose "a heavy burden ... on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to ... counsel," *Miranda* v. *Arizona,* 384 U. S. 436, 475 (1966), and that the statements were therefore admissible in evidence. The prosecuting attorney made no attempt to meet this burden, relying on the testimony elicited by the defendant (who had gone beyond what was required of him). Ordinarily we would have determined the correctness of the trial judge's ruling on the motion solely upon the record made at the voir dire. But in this case we ordered a second evidentiary hearing on the defendant's motion to suppress, retaining jurisdiction. Our reasons for this action will be discussed hereafter in connection with the defendant's objections to it.

At the second evidentiary hearing Officer Hayden testified that the defendant was brought into the station about 10:30 A.M. and that when given the card he "looked at one side and he turned it over to the other side." The officer further testified that, in his opinion, the defendant had read both sides of the card. The prosecuting attorney then called two other officers who had arrested the defendant and brought him into the station. They both testified that the Miranda warnings had been read to him after his ar-

---

[4] The Supreme Judicial Court has not yet decided whether the prosecution must meet its burden beyond a reasonable doubt or whether a lesser standard of proof will suffice. *Commonwealth* v. *Hosey,* 368 Mass. 571, 577, fn. 2 (1975). Compare *Lego* v. *Twomey,* 404 U. S. 477, 489 (1972); *United States* v. *Matlock,* 415 U. S. 164, 177-178, fn. 14 (1974). We are not certain that the Commonwealth met its burden even "by a preponderance of the evidence."

rest and while being driven to the police station, where he was taken immediately. The prosecuting attorney also produced three other policemen, who, on various occasions prior to this incident, had arrested the defendant in connection with other matters and had given him the Miranda warnings. The trial judge made detailed and careful written findings on the basis of the officers' testimony and reaffirmed his denial of the motion to suppress. This testimony abundantly supports his conclusion that the defendant's statements were the product of a knowing and intelligent waiver.

The defendant does not now attack this conclusion. Rather, he objects to our order for an evidentiary hearing and contends that in reviewing the trial judge's disposition of the motion to suppress we should limit ourselves to the testimony adduced at the original voir dire. He does not argue that we lacked the power to order an evidentiary hearing. See *Commonwealth* v. *Tempesta*, 361 Mass. 191, fn. 1 (1972); *Commonwealth* v. *Blasser*, 2 Mass. App. Ct. 754, 755, fn. 1 (1975). He argues, rather, that *Commonwealth* v. *Hosey*, 368 Mass. 571, 574, fn. 1 (1975), limits the situations in which an evidentiary hearing may be ordered to those in which the judge has made no findings (though in such a case an order for findings on the record already made would ordinarily seem sufficient, e.g., *Commonwealth* v. *Mendes*, 361 Mass. 507, 511, fn. 4 [1972]; *Commonwealth* v. *Murphy*, 362 Mass. 542, 544 [1972]) and to those cases in which there has been a change in law after the decision on the motion in the lower court. We do not believe that the *Hosey* footnote is meant to establish criteria for a remand for an evidentiary hearing. It is, rather, concerned with a remand for findings when those have not been made.

The reversal in the *Hosey* case stems from the concern that " 'every effort' was [not] made by the police to see to it that the defendant did not unknowingly relinquish basic constitutional protection indispensable to a fair trial." 368 Mass. at 578. Here, the transcript of the trial reveals — quite apart from the second voir dire — that Officer Hayden

was not so perfunctory in discharging his obligations to the defendant as the transcript of the first voir dire would indicate. He testified at trial in response to a question put by the prosecuting attorney: "I made him read the card. He read both sides of the card. I asked him whether he understood what he read and he said he did. He might have had the card a minute or two, and he gave it back to me."

The defendant urges that we may not use the evidence elicited at trial in deciding the sufficiency of the evidence at the voir dire. As a general rule this is correct. See *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. 522, 532, fn. 9 (1975); *Commonwealth* v. *Roy,* 2 Mass. App. Ct. 14, 18, fn. 1 (1974). Compare *Commonwealth* v. *Navarro,* 2 Mass. App. Ct. 214, 217 (1974). (The trial judge, who had denied a motion to suppress after a pre-trial voir dire, held a further voir dire during trial when testimony came in inconsistent with the testimony at the original voir dire.) However, these cases do not foreclose consideration of the entire record in connection with our treatment of the case as a whole. See *Commonwealth* v. *Causey,* 356 Mass. 125, 130 (1969) (error in upholding a warrant was immaterial because it appeared at trial that no warrant was needed); *Roy* case, *supra,* at 18, 21 (harmless error indicated on the basis of the whole record). Nor did we credit Officer Hayden's trial testimony (that was a matter for the trial judge on rehearing) other than to justify a remand to permit him to re-evaluate his conclusion in the light of a fuller record.

The defendant argues in his brief that the prosecution should not be given a "second bite at the apple" or, as put in *People* v. *Bryant,* 37 N.Y. 2d 208, 211 (1975): "There [i]s no justification here to afford the people a second chance to succeed where once they had tried and failed." See *Jenkins* v. *State,* 25 Md. App. 551, 554-557 (1975); *People* v. *Provost,* 50 App. Div. 2d 1087 (N.Y. 1975). This argument has weight, both in terms of judicial economy and in terms of avoiding hardship to a defendant which may arise from "piecemeal prosecution." See Black, J., dissenting and concurring in *Jackson* v. *Denno,* 378 U. S. 368,

409-410 (1964). Cf., however, G. L. c. 278, § 28E, the interlocutory appeals statute. Cf. also *Commonwealth* v. *Colella,* 2 Mass. App. Ct. 706 (1974), where, after a proceeding under G. L. c. 278, § 28E, a motion to suppress was heard anew, and *Commonwealth* v. *Daniels,* 366 Mass. 601, 609 (1975), in which the court ordered a new trial and indicated the appropriateness of a renewal of a motion to suppress.

But we do not believe we are absolutely constrained by the principle on which the defendant relies in a case where the record indicates circumstances justifying a departure from the rule. This we think is such a case. Here the original record is clear that there was added evidence available to the prosecuting attorney by which he probably could have met his burden. See *United States* v. *Watson,* 469 F. 2d 362, 367-368 (5th Cir. 1972). Nor is there any indication (and no argument is made) that the evidence was purposely withheld from the first voir dire, so that the inadequate development of the facts was due to a tactical choice to save the evidence for the trial. Cf. *Townsend* v. *Sain,* 372 U. S. 293, 317 (1963). We see no reason here for such a course since this testimony merely amplified the evidence at the first voir dire and related only to the character of the waiver.[5] Further, it appears that the defendant may also have been at fault. At the first voir dire he made no contention that the defendant had not read the Miranda card. The thrust of his argument was that the defendant was only seventeen years old, contending that this ipso facto made an intelligent and knowing waiver impossible. The judge rightly rejected this argument (see *Commonwealth* v. *Cain,* 361 Mass. 224, 229 [1972]; *Commonwealth* v. *Daniels,* 366 Mass. 601, 605-606 [1975]), and it is not seriously pressed in the defendant's brief. Thus, as

---

[5] Contrast *Gill* v. *State,* 265 Md. 350 (1972); *People* v. *Armstrong,* 51 Ill. 2d 471 (1972); *McNeil* v. *State,* 308 So. 2d 236 (Miss. 1975); and *Russey* v. *State,* 257 Ark. 570 (1975), cases which hold that where the defendant challenges the voluntariness of his confession, the State must produce all material witnesses (or explain their absence) or suffer reversal on appeal should the confession be admitted at trial.

Commonwealth *v.* Howard.

in *Frazier* v. *United States,* 419 F. 2d 1161, 1169 (D.C. Cir. 1969), "the government had no clear warning that it would need to produce more evidence."

2. *The "mug shot."*   The "mug shot" (to the admission of which the defendant objects) was introduced in evidence in connection with the photographic identification of the defendant made by the victim the day after the offense. At that time the victim selected the defendant's picture from a group of thirteen "mug shots" shown to him. Under the circumstances, this photographic identification was important (if not absolutely necessary) to the prosecution's case. The victim was quite inarticulate on the stand, and his in-court identification of the defendant was not altogether certain. See *Commonwealth* v. *Nassar,* 351 Mass. 37, 42 (1966); *Commonwealth* v. *McLellan,* 351 Mass. 335, 336 (1966); *Commonwealth* v. *Kelly,* 1 Mass. App. Ct. 441, 446 (1973). Furthermore, the photographs had been sanitized to the extent possible. Compare *Commonwealth* v. *McCants,* 3 Mass. App. Ct. 596, 597-598 (1975).

3. *The continuance.*   The entire trial (including the voir dire) lasted one day. During the morning session, after the Commonwealth rested, defense counsel mentioned to the court that he had not anticipated going forward that quickly. The court then recessed until 2:00 P.M. When the case resumed the defendant and his mother testified. At the conclusion of their testimony (at what time is not clear) defense counsel moved for a continuance until the following morning to give him an opportunity to bring in two additional witnesses.[6]

In view of the short continuance requested there is much to be said for the defendant's complaint. The grant of the continuance might have avoided the appearance that expedition was the predominant consideration. However, the defendant was arrested for the robbery on April

---

[6] While it is not stated in so many words, we assume that the two witnesses referred to were alibi witnesses with whom, the defendant testified, he had been during the time the crime occurred.

12, 1974, and the case was tried more than seven months later, on December 10, 1974. Yet, defense counsel gave no indication to the court in moving for a continuance whether he had interviewed the prospective witnesses during this period and, if he had, whether they would indeed have corroborated the defendant's story. In the circumstances we cannot say that there occurred, as the defendant would have us hold, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay." *Ungar* v. *Sarafite,* 376 U. S. 575, 589 (1964). There was, therefore, no abuse of discretion. See *Commonwealth* v. *Gilchrest,* 364 Mass. 272, 273-278 (1973), and cases cited; *Commonwealth* v. *Dukes,* 3 Mass. App. Ct. 771 (1975); Rule 4 of the Superior Court (1974). Cf. *Commonwealth* v. *Swenor,* 3 Mass. App. Ct. 65, 66-68 (1975).

*Judgments affirmed.*