(No. 72268.—

(No. 72269.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. R.D., a Minor, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALEX BLANKENSHIP, Appellee.

*Opinion filed April 15, 1993.—Rehearing denied May 28, 1993.*

HARRISON, J., took no part.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Gael O'Brien, Veronica Ximena Calderon and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Robert D. Glick, Assistant Public Defender, of counsel), for appellee.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Gael O'Brien, Veronica Ximena Calderon and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

Law Offices of Terry Sullivan, Ltd., of Rolling Meadows (Nancy J. Nicol, of counsel), for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The State, in these consolidated appeals, asks this court to redefine and to limit the scope of the material witness rule (*People v. Armstrong* (1972), 51 Ill. 2d 471, 475-76; *People v. Rogers* (1922), 303 Ill. 578; Ill. Rev. Stat. 1989, ch. 38, par. 114—11(d)). That rule requires the State to produce or explain the absence of all material witnesses connected with the taking of a confession whenever the voluntary nature of a confession is brought into question in a motion to suppress. The State also asks this court to overturn the appellate court decisions which reversed the defendants' convictions on the ground that the State failed to produce all material witnesses at the hearings on the defendants' motions to suppress.

## I

These consolidated appeals involve two defendants. Because the appeals require us to evaluate the trial courts' rulings on the defendants' motions to suppress, we set forth the evidence adduced at each defendant's suppression hearing separately.

## A

In No. 72268, defendant R.D. was charged in a juvenile petition with burglary. The defendant filed a motion to suppress statements he made to the police. The motion alleged that the defendant's statements were involuntary. Following a hearing, the trial court denied the motion. After a bench trial, the defendant was found guilty of the charge and was sentenced to 30 days in the Illinois Department of Corrections, time considered served. The appellate court reversed the defendant's conviction and remanded for a new suppression hearing, finding that the State had violated the material witness rule by failing to present the testimony of two material witnesses at the suppression hearing. No. 1—90—2417 (unpublished order under Supreme Court Rule 23).

The relevant facts relating to the motion to suppress are as follows. The defendant moved to suppress his statements to the police on two grounds: (1) that he requested counsel in response to *Miranda* warnings, but counsel was not afforded to him; and (2) that his statements were the result of improper psychological coercion, because he overheard a codefendant in another room implicating him prior to his confession.

The defendant testified at the suppression hearing that he was brought to the police station and placed in an interview room. The defendant testified that, as he was escorted into an interview room, he saw a codefendant sitting in another interview room. As he waited to

be questioned by the police, the defendant overheard that codefendant implicating him in other burglaries. He testified that he was frightened when he overheard these statements. He testified that a female police officer later came into the room where he was waiting and said, "You are through." Detective Michael Rogers then came into the interview room to question him. The defendant asked Detective Rogers to call his father, but the detective told him that they had attempted to reach his father, but no one was home. The minor claimed that he then asked to speak with a public defender, but Detective Rogers told him that he would have to go to the Audy home to speak to a public defender. The defendant then made inculpatory statements to Rogers. The defendant's motion to suppress claimed that these statements were the result of psychological pressure exerted upon him at the police station and that the statements were taken in violation of his right to counsel established in *Miranda*.

Detective Rogers testified for the State at the suppression hearing. Rogers testified that he interviewed the defendant in the hallway outside of the interview room where he was being held. Rogers advised the defendant of the nature of the charge against him and of his *Miranda* rights. Rogers asked the defendant if he wanted his parents notified of his arrest and wanted them present during the interview. When the defendant asked that his family be contacted, there was an unsuccessful attempt to notify them. Rogers then told the defendant that he could wait until his parents came to the station before he spoke to the detective. Rogers testified that the defendant responded that he would speak to the detective without his parents or an attorney present. The defendant then made inculpatory statements to Rogers. Detective Rogers testified that Officers Cooper and Jozefowicz were present when the defendant

made inculpatory statements, but that they were merely observing and did not ask any questions. Rogers denied that the defendant requested an attorney and also denied that he told the defendant that he would have to go to a juvenile facility to speak to a public defender.

At the end of the suppression hearing, the defendant objected to the State's failure to produce all material witnesses at the suppression hearing. The trial court overruled this objection, finding that the two police officers who were present while Detective Rogers interviewed the defendant were not material witnesses. The trial court also found that the defendant was given and knowingly waived *Miranda* warnings, that the defendant's statements were not the product of mental or psychological coercion, and that there was no evidence to suggest that his statements were involuntary. Accordingly, the trial court denied the defendant's motion to suppress his inculpatory statements.

In his statement to the police, the defendant admitted that he and some friends entered the laundry room of an apartment building located at 1046 Sheridan Road and took money from coin boxes in the laundry machines. While they were in the laundry room, the police arrived and arrested the defendant and the others in the group. The defendant was subsequently adjudicated a delinquent and ordered to serve 30 days in jail, time considered served.

As stated, the appellate court reversed the defendant's conviction and remanded for a new suppression hearing, finding that the State failed to produce all material witnesses at the hearing on the motion to suppress. We allowed the State's petition for leave to appeal (134 Ill. 2d R. 315(a)).

## B

In No. 72269, defendant Alex Blankenship was

charged by information with possession of a controlled substance with intent to deliver. Prior to trial, the defendant filed motions to quash his arrest, to suppress evidence and to suppress statements he made to the police. The defendant's motion to suppress statements he made to the police was predicated upon the claims that the police failed to give him *Miranda* warnings and ignored his repeated requests for counsel. At the hearing on the defendant's motions, the following evidence was introduced. Detective Patrick Darcy of the Chicago police department testified that, on Sunday, February 16, 1986, he received information from an informant that the defendant had a large quantity of cocaine at his used furniture store. Darcy and four other officers drove to the defendant's store, located at 1400 South Cicero. At 12:25 p.m., Darcy entered the front door, which was unlocked, followed by Detective Graham and Sergeant DeAntonio. Officers Rosiak and Papalito went to the rear entrance. Darcy walked into the store, displayed his badge and identified himself. As Darcy walked toward the back of the store, the office door on the right-hand side of the store opened and the defendant stepped out. Darcy saw, just inside the door, on top of a television set, a small amount of white powder next to an open piece of white paper. Based on his experience as a narcotics officer, Darcy believed that the white powder was cocaine. Darcy also observed an open gym bag containing a scale and a large clear plastic bag full of a white chunky substance, which Darcy also believed was cocaine.

Darcy entered the office and placed the two men inside under arrest. Detective Graham placed the defendant and a fourth man under arrest. Darcy advised all four men of their *Miranda* rights. Officers Rosiak and Papalito then entered the store and escorted three of the men to a couch in the rear storage area. As Detectives

Darcy and Graham walked with the defendant toward the rear of the store, the defendant told them that all of the cocaine was his and that the other men were just visiting. Darcy and Graham then turned around and walked the defendant back to a desk at the front of the store. Darcy asked the defendant if he had any more cocaine in the store and defendant responded that he had more in the safe. Darcy then asked the defendant if he would sign a waiver of rights form and a consent to search form. The defendant agreed to sign such forms.

After signing the forms, the defendant showed Detectives Darcy and Graham the safe and opened it. Two additional large clear plastic bags of a white chunky substance were recovered from the defendant's safe. Darcy then asked the defendant to sign a form admitting ownership of all the items that were recovered. The defendant read the form, which Darcy wrote out by hand, and signed it.

Darcy denied that he told the defendant that the other men in the store would be released if the defendant admitted owning the contraband. Darcy also testified that the defendant did not ask to make a phone call or to speak to an attorney prior to making any statement.

Detective Graham's testimony essentially corroborated that of Detective Darcy. Graham testified that the front door of the defendant's store was closed but unlocked, and that no force was used to open the front door. He also testified that the officers never drew their weapons in the store. Graham and Darcy questioned the defendant by the desk, while the other officers were with the defendant's companions in the rear storage area. The defendant did not ask to make a telephone call or to speak to an attorney. When the defendant arrived at the police station, Graham asked him if he wanted to use the telephone. The defendant said that he did and was allowed to make a telephone call.

The defense witnesses testified that the police forcibly broke into the defendant's store, which was locked and not open for business, with their guns drawn, and ignored the defendant's repeated requests to call his attorney.

Danny Spivey, who had known the defendant for 15 years, testified that he was approaching the defendant's store on February 16, when he saw three men walking toward the store. One man had a sledge hammer and the other two men had guns drawn. He did not actually see the officers gain entry into the store, but noticed that the shade on the door was drawn and the sign said "Closed."

The defendant testified that his store was not open for business on February 16, 1986. The door was locked, the shade on the door was pulled, and the sign on the front door was marked "Closed." The defendant and two of his friends were in his office with the door latched, when he heard a big bang, turned around and saw the door pushed open. Two officers were standing in the doorway with guns drawn. The defendant and his three companions were brought to the rear of the store. The defendant testified that he asked one of the officers what was going on and whether he could call his lawyer. The officer told him to sit down and remain quiet. Thereafter, the defendant heard someone yell, "Tell someone we found it." The defendant alleged that he was then taken into his office and told to open the safe, which he did. The defendant also testified that he was told that, if he signed some papers, his friends could leave. The defendant signed the papers without reading them. The defendant testified that he was never advised of his *Miranda* rights and asked several times to call his attorney, but was not permitted to do so until he arrived at the police station. The defendant testified that, when

he left the store, the electric lock which was on the front door when he arrived was "busted off."

Ronald Graf, a friend of the defendant for 15 to 20 years, testified that he and the defendant entered the store at approximately 10:30 a.m. The front door, which had a "Closed" sign on it, was locked behind him. At 12:30 p.m., Graf was talking on the telephone when he saw three men crash through the door with guns drawn. One man was carrying a sledge hammer. The glass in the front door did not break. Graf was ordered at gunpoint to stop using the telephone. Two officers went into the defendant's office. Subsequently Graf was handcuffed to two of the men who were in the defendant's office and then all three men were taken to the rear area of the store. The defendant was seated with them minutes later. Graf overheard the defendant ask to call his attorney, but was told he would have time for that later. After approximately 40 minutes, the defendant was called up to the front desk, where he was told that his friends would be released if he signed some papers. Shortly thereafter, Graf was permitted to leave.

Henry Latizi, a friend of the defendant for 12 years, testified that he was in the store office with the defendant when the police came rushing through the door with their guns drawn. Latizi was handcuffed to Graf and another man and was taken to the back of the store. When the defendant was brought to the back of the store, Latizi overheard him ask to call his lawyer. Latizi also heard the police tell the defendant that if he admitted everything, the police would let the others go. Latizi testified that the police never advised the men of their *Miranda* rights. Latizi also identified the picture of the broken lock on the front door of the defendant's store.

Richard Davenport, the defendant's maintenance man, testified that he went to the defendant's store within two hours after the defendant's arrest. He no-

ticed that the top lock on the front door and the latch on the smaller office door were broken. Attorney Terry Sullivan testified that he also went to the defendant's store approximately two hours after the defendant's arrest. He took photographs of the broken lock on the front door and the damage to the office door. These photos were admitted into evidence. Davenport identified photographs which depicted the broken locks.

After hearing the evidence, the trial court denied the defendant's motions to quash his arrest, to suppress evidence and to suppress statements he made to the police. The court found that the police officers entered the defendant's store when it was open for business. The court further found that the officers observed white powder on the television when the defendant stepped out of his office. The court determined that the defendant was advised of his rights and made admissions voluntarily. The court found that the defendant's claims that the front door and office door were locked were not credible.

At trial, the parties stipulated to the evidence and testimony presented at the pretrial hearing. The court found the defendant guilty of possession of a controlled substance with intent to deliver and sentenced him to a six-year term of imprisonment. As stated, the appellate court reversed, holding that Officers Rosiak and Papalito were material witnesses and should have been called at the suppression hearing. (No. 1—89—3466 (unpublished order under Supreme Court Rule 23).) This court allowed the State's petition for leave to appeal (134 Ill. 2d R. 315(a)).

## II

As stated, each defendant contends that the trial court erred in denying his motion to suppress his confession. Each defendant claims that the State failed to call all witnesses whose testimony was material to the issue of the

voluntary nature of his confession, and thus did not meet its burden of proving the confession voluntary. Before considering whether the trial courts' rulings were correct, we will review the governing principles of law. Section 114—11(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—11(d)) specifies that the burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State. (Ill. Rev. Stat. 1989, ch. 38, par. 114—11(d).) This court has often stated that, where the voluntary nature of a confession is questioned in a motion to suppress, the State must prove that the confession was voluntary by the preponderance of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70.) The court has also stated that the State must produce all material witnesses on the issue of voluntariness or satisfactorily explain their absence. *In re Lamb* (1975), 61 Ill. 2d 383, 389; *People v. Armstrong* (1972), 51 Ill. 2d 471, 476.

The "material witness" rule originated in *dicta* set forth in *People v. Rogers* (1922), 303 Ill. 578. The defendant in *Rogers* was convicted of robbing Louis Plomgren with a gun. Rogers took, with force and violence, $8,571 from the victim, who was the cashier of Western Newspaper Union. The money was part of the Newspaper Union's payroll. The State sought to admit into evidence a confession allegedly made by the defendant. There was evidence that Rogers was beaten into submission by the police to force a confession. The State called the victim to testify that Rogers confessed to him. However, the State did not call any of the police officers to testify about the confession. The court observed:

> "[T]he assistant State's attorney contented himself with examining the man who knew the least about what had taken place, Plomgren, who testified that Rogers answered readily and apparently voluntarily and willingly. But he did not come onto the scene, apparently, until the police had suc-

ceeded, by fair or foul means,—the court was not advised which,—in getting Rogers into a humor to confess." (*Rogers*, 303 Ill. at 585.)

The trial judge refused to admit the defendant's confession because he was satisfied that it had been obtained only after the police beat the defendant into submission.

While the trial was in progress, a newspaper printed an article which was critical of the judge's ruling suppressing the defendant's confession. The *Rogers* court affirmed the conviction. Then, in *dicta*, it rose to the defense of the trial judge. The court noted:

> "There is absolutely no fault to be found with the court in its rulings \*\*\*, unless it was a failure to fine and jail the assistant State's attorney for his persistence in offering to prove the confession by the same witness and by other witnesses after the court had ruled it improper without first making a clean record to the effect that the confession was voluntarily and willingly made and not forced by the criminal practices of the police. \*\*\*
>
> * * *
>
> \*\*\* Trial judges ought not be criticised [*sic*] when they are following the law and trying cases in a legal and orderly manner. And we may further say that the determination of the judge in this case to do his legal duty, even at the expense of severe and unjust criticism, is all that has saved this judgment from a reversal, and he was barely able to save it from such a fate owing to the persistence of the State in its efforts to get before the jury incompetent evidence." (*Rogers*, 303 Ill. at 586-90.)

Although it was unnecessary to a decision in that case, the *Rogers* court proceeded to promulgate a hard and fast rule that trial courts should absolutely refuse to admit a confession into evidence until the "State has examined every police officer and everyone present at [the defendant's] examination, so that the full truth may be disclosed." (*Rogers*, 303 Ill. at 590; see also *People v. Sims* (1961), 21

Ill. 2d 425, 434 (House, J., specially concurring).) This rule became known as the "material witness rule."

Although the *Rogers* court set forth the material witness rule in *dicta* and in the context of criticizing a newspaper article, that rule was subsequently interpreted to apply whenever a defendant moves to suppress a confession on the ground that it was involuntary. (See, *e.g., People v. Brooks* (1987), 115 Ill. 2d 510 (applying rule where defendant alleged her confession was involuntary because of psychological coercion); *People v. Lumpp* (1983), 113 Ill. App. 3d 694 (applying rule where defendant's alleged confession was involuntary because the police ignored defendant's request for counsel); but see *People v. McClure* (1976), 43 Ill. App. 3d 1059 (refusing to apply rule where motion to suppress is predictated upon a *Miranda* violation).) Our legislature subsequently limited the judicially created rule by specifying that a defendant must raise any objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary in the trial court. (Ill. Rev. Stat. 1989, ch. 38, par. 114—11(d).) Failure to raise an objection in the trial court results in waiver of the issue on appeal.

Since its inception in 1922, several members of this court have questioned the wisdom and value of the judicially created material witness rule. For example, in *People v. Dale* (1960), 20 Ill. 2d 532, two dissenting justices criticized the courts for transforming what was intended as a practical test, " 'designed to assist the court in determining whether or not the confession was involuntary,' " into an inflexible rule. *People v. Dale* (1960), 20 Ill. 2d 532, 534 (Bristow, J., dissenting, joined by Hershey, J.), quoting *People v. Jennings* (1957), 11 Ill. 2d 610, 618.

Similarly, in *People v. Sims* (1961), 21 Ill. 2d 425, three members of the court expressed dissatisfaction with the results produced by the inflexible application of the material witness rule, stating:

"To automatically reverse any conviction without even looking at the evidence upon which the trial judge made his finding of voluntariness because all material witnesses were not called or their absence explained, places form above substance. If the present rule insured any degree of certainty as to a proper determination of the voluntariness of a confession, it would merit the position it now holds. I believe, however, that justice has been averted on many occasions by its application. It has been stated that the rule is not a mechanical one but a practical one designed to assist the trial court in determining whether the confession was involuntary. [Citation.] The cases do not, however, support this statement, nor can they because of the inherent nature of the rule." (*People v. Sims* (1961), 21 Ill. 2d 425, 433-35 (House, J., specially concurring, joined by Bristow and Klingbiel, JJ.).)

In *People v. Armstrong* (1972), 51 Ill. 2d 471, 478, Chief Justice Underwood expressed doubt as to the wisdom of continuing the rule, stating:

"[A] rule which automatically reverses a conviction whenever a police officer, as to whom no claim of participation in coercive activity is made, is unavailable at trial is both an unnecessary and an undesirable rule.

The policy evidenced by the rule is, in my judgment, acceptable if treated simply as a general guideline to be applied in those situations where some reason is shown to exist warranting the belief that the testimony of the absent witness would be of substantial value in resolving the question of voluntariness. *** I cannot subscribe to what I consider to be *** an unwarranted application of a rule which seems to have become largely mechanical in its operation."

It is evident that most of the criticism of the material witness rule has been directed at the manner in which reviewing courts have applied the rule. Members of this court have stated that the rule should not be applied mechanically to reverse a trial court's ruling on a motion to suppress, simply because a material witness was not produced. (See, *e.g., People v. Sims* (1961), 21 Ill. 2d 425, 433-

35 (House, J., specially concurring, joined by Bristow and Klingbiel, JJ.).) Rather, the appropriate tests should be whether the State satisfied its burden of proving that the confession was voluntary and whether the evidence introduced at the suppression hearing supports the trial court's denial of the motion to suppress.

Recently, this court heeded this criticism and refused to reverse a trial court's ruling denying the defendant's motion to suppress, even though the State had failed to call all material witnesses at the suppression hearing. (*People v. Patterson* (1992), 154 Ill. 2d 414.) In *Patterson*, the defendant claimed that his confession was involuntary and should have been suppressed because the State failed to call all material witnesses at the suppression hearing. This court considered the claim and agreed that the State had failed to call three material witnesses at the suppression hearing. This court nonetheless affirmed the trial court's denial of the defendant's motion to suppress his confession.

The court in *Patterson* concluded, after reviewing the evidence presented at the suppression hearing, that the trial court did not abuse its discretion in making a decision on the motion to suppress without the testimony of the three material witnesses. The court noted that the purpose of the material witness rule is to "safeguard against improperly induced confessions and not to require an empty exercise." (*Patterson*, 154 Ill. 2d at 450-51.) The court stated:

> "In the final analysis, whether a confession is voluntary or involuntary is a matter of the competency of the evidence which should be left to the discretion of the trial court. (See *Sims*, 21 Ill. 2d at 434 (House, J., specially concurring, joined by Bristow and Klingbiel, JJ.).) If in order to resolve the matter, the trial court requires that all of the material witnesses be called, it should do so. Yet, if the trial court is satisfied to hear less than all of such witnesses, that should

also be within the court's discretionary power and a review-
ing court should reverse only where there has been a clear
abuse of that discretion. See *Sims*, 21 Ill. 2d at 434 (House,
J., specially concurring, joined by Bristow and Klingbiel,
JJ.); *cf. Brooks*, 115 Ill. 2d 510." (*Patterson*, 154 Ill. 2d at
450.)

The *Patterson* court determined that the material witness
rule should no longer be applied mechanically to reverse a
defendant's conviction or the trial court's ruling upon a
motion to suppress simply because all material witnesses
were not called. In so holding, the *Patterson* court recog-
nized that the material witness rule was created to assist
*trial courts* in determining whether or not a particular
defendant's confession was voluntary. Where, however, a
trial court determines that the testimony of a certain "ma-
terial" witness is not needed to resolve the question of vol-
untariness, that court's decision will not be reversed ab-
sent an abuse of discretion.

We now conclude that the rationale of *Patterson* should
be taken to its logical conclusion and that the material wit-
ness rule should be repudiated entirely. The State urges
this court to relieve the prosecution of its obligation to call
all material witnesses at a suppression hearing. The State
points out that only a minority of States have adopted
rules similar to the material witness rule. (See, *e.g., Re-
meta v. State* (1989), 300 Ark. 92, 777 S.W.2d 833; *Com-
monwealth v. Howard* (1976), 4 Mass. App. Ct. 476, 350
N.E.2d 721; *Commonwealth v. Moore* (1971), 443 Pa. 364,
279 A.2d 179.) The State urges this court to join the over-
whelming majority of States which do not place such a
burden on the prosecution. The State contends that the
rule is no longer necessary in view of current discovery
rules. The State also contends that the prosecutor's bur-
den of persuasion and the constitutional safeguards rooted
in Federal and State case law sufficiently protect a

defendant's fifth amendment privilege against self-incrimination. We agree.

At the time *Rogers* was decided, there was no right of discovery in criminal cases. (2 C. Torcia, Wharton's Criminal Procedure §333, at 544 (13th ed. 1990); *People v. Schallman* (1920), 295 Ill. 560.) Criminal defendants had no right to be informed, in advance of trial, of the existence of inculpatory statements, of the names of witnesses to the making of such statements, or of the nature of such statements. Because defendants had no access to information in the prosecutor's possession, they had no way to prepare a meaningful challenge to the prosecution's introduction of an involuntary confession at trial. The burden placed on the prosecution to produce all material witnesses to the voluntariness of a confession at the suppression hearing compensated to some extent for the defendant's inability to prepare a pretrial challenge to the introduction of an involuntary confession.

After *Rogers* was decided, however, our legislature and this court adopted procedures allowing for liberal discovery in criminal cases. Under current statutes and court rules, the State has the duty to disclose to the defense, upon request, the substance of all oral and written statements made by the defendant and known to the State. (See Ill. Rev. Stat. 1989, ch. 38, par. 114–10; 134 Ill. 2d R. 412(a)(ii).) This rule is not limited to formal statements made to the authorities, but encompasses any " 'statements made to anyone that might have bearing on the defendant's guilt or innocence.' " (*People v. Orr* (1986), 149 Ill. App. 3d 348, 358-59, quoting *People v. Weaver* (1982), 92 Ill. 2d 545, 558.) The State must also furnish the defendant with a list of witnesses to the making and acknowledgment of such statements. (See Ill. Rev. Stat. 1989, ch. 38, par. 114–10; 134 Ill. 2d R. 412(a)(ii).) The State also has a duty to disclose the names and addresses of all persons whom the State intends to call as

witnesses at trial, together with relevant written or re-corded statements of such witnesses and memoranda con-taining or summarizing substantially verbatim reports of their oral statements. See Ill. Rev. Stat. 1989, ch. 38, par. 114—9; 134 Ill. 2d R. 412(a)(i).

Because the State has an obligation to provide the de-fense with a list of witnesses to the making of a confession prior to the suppression hearing, there is no need for a separate rule requiring the State *to produce* such wit-nesses at the suppression hearing. Accordingly, statutes and court rules which provide for liberal discovery by the defense have eliminated the need for a separate material witness rule.

Current statutes and court rules have likewise elimi-nated any need for a separate rule requiring the State *to call* all material witnesses at a suppression hearing. When *Rogers* was decided, a party was prohibited from cross-ex-amining a witness whom he or she called to testify. Conse-quently, defendants could not cross-examine or impeach those police officers involved in the taking of the allegedly involuntary confession unless the *State* called the witness to testify at the suppression hearing. Current statutes and rules, however, permit defendants greater latitude in ques-tioning such potentially "hostile" witnesses. For example, Supreme Court Rule 238 states that the credibility of a witness may be attacked by any party, including the party calling him. (134 Ill. 2d R. 238(a).) In addition, that rule provides that a witness may be examined by the party call-ing him as if under cross-examination, if the court deter-mines that the witness is hostile or unwilling. (134 Ill. 2d R. 238(a).) A defendant may also ask the court to call a particular witness as the "court's witness" when the wit-ness' testimony will relate to noncollateral issues and is necessary to prevent a miscarriage of justice, but the defendant does not wish to vouch for the witness' veracity. (*People v. Pastorino* (1982), 91 Ill. 2d 178; *People v. Mo-*

*riarity* (1966), 33 Ill. 2d 606.) The effect of declaring a witness a court's witness is to open the witness to cross-examination and impeachment by either party. (*People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 1022.) Thus, current rules permit defendants to cross-examine and impeach hostile witnesses, even if the defendant has called that witness to testify at the suppression hearing. These rules have eliminated the need for a rule requiring the State to call all material witnesses at a suppression hearing.

We also note that, at the time the material witness rule was adopted, defendants did not enjoy the constitutional and statutory protections now available to safeguard the privilege against self-incrimination and to prevent the admission of coerced confessions into evidence. The burden placed on the prosecution to produce all material witnesses to the voluntariness of a confession compensated to some extent for the lack of protections now afforded to the defendant. *People v. Stokes* (1970), 46 Ill. 2d 325, 327.

Since the material witness rule was created, however, the United States Supreme Court has adopted a number of procedural safeguards aimed at eliminating involuntary and coerced confessions. For example, before defendants may be subjected to custodial interrogation, they must now be informed of their *Miranda* rights and make a knowing and intelligent waiver of those rights. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Statements taken in violation of the procedural rules established in *Miranda* and its progeny are presumed involuntary and are inadmissible in the State's case in chief. See *People v. Winsett* (1992), 153 Ill. 2d 335 (and cases cited therein).

The Court has also adopted a number of measures aimed at preventing the admission of coerced confessions into evidence. Criminal defendants who claim their confessions were coerced are now constitutionally entitled to a hearing before the trial court on the issue of the voluntari-

ness of a confession. (*Jackson v. Denno* (1964), 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (as a matter of due process, the issue of voluntariness of a confession must be decided by a trial judge outside the presence of the jury).) The trial judge must make specific findings regarding the voluntariness of a confession before that confession may be admitted into evidence. (*Sims v. Georgia* (1967), 385 U.S. 538, 17 L. Ed. 2d 593, 87 S. Ct. 639.) The Court has also held that the trial judge may not consider the probable truth or falsity of a confession in determining whether that confession is voluntary. (*Rogers v. Richmond* (1961), 365 U.S. 534, 5 L. Ed. 2d 760, 81 S. Ct. 735.) Although a *pretrial* hearing is not constitutionally required, our legislature has provided by statute for pretrial evidentiary hearings to challenge the admissibility of assertedly involuntary confessions. (Ill. Rev. Stat. 1989, ch. 38, par. 114—11.) Accordingly, criminal defendants now enjoy a wide range of constitutional and statutory protections aimed at preventing the admission of coerced confessions into evidence at trial. These protections did not exist at the time our court created the material witness rule.

This court has relied upon the expanded constitutional protections now available to criminal defendants as a reason for refusing to expand the scope of the material witness rule. In *People v. Stokes* (1970), 46 Ill. 2d 325, the court considered a defendant's claim that the material witness rule should apply where the State seeks to introduce an in-court identification and the defendant objects on the ground that his request for counsel at a pretrial lineup was denied and the lineup was impermissibly suggestive. The court refused to apply the material witness rule in such circumstances, stating:

> "We feel that the circumstances which gave rise to the rule in the earlier confession cases do not exist in the present identification cases, particularly with the advent of *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87

S. Ct. 1926; *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; and *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. Defendants do not suggest why the usual [discovery and/or evidentiary] rules governing the production of witnesses or explanation of the absence of witnesses are not sufficient for the resolution of the issues raised in this type of pretrial motion and we are not aware of any reason. Accordingly, we hold that the failure of the prosecution to call all material witnesses on the issues raised by a motion to suppress identification testimony or explain their absence will not of itself require the reversal of a conviction." *Stokes*, 46 Ill. 2d at 328.

Following the reasoning of *Stokes*, we likewise conclude that the circumstances which created a need for the material witness rule in 1922 do not currently exist. As noted above, criminal defendants now enjoy a wide range of constitutional and statutory protections aimed at preventing the admission of coerced confessions into evidence at trial, which did not exist at the time our court created the material witness rule.

In addition, current legislation and court rules have effectively eliminated the need for a separate material witness rule. Rules providing for liberal discovery in criminal cases have eliminated the need for a separate rule requiring the State to produce all material witnesses at the suppression hearing. Likewise, rules granting defendants greater latitude in questioning witnesses whose testimony is material to the issue of whether a confession was voluntary have eliminated the need for a separate rule requiring the *State* to call all material witnesses to testify at the suppression hearing. The rules governing the disclosure, production and presentation of witnesses in criminal cases govern where a defendant moves to suppress a confession on the ground that it was involuntary.

Under these rules, the State must disclose the identity of every witness to the taking of a confession to the defense prior to the suppression hearing. The State is not

required to call all material witnesses to testify at the suppression hearing, however, if it can meet its burden of proving the confession voluntary without such testimony. Of course, a defendant may call any material witness to testify at the suppression hearing, if the defendant considers that witness' testimony necessary, even if the State does not call that witness. The defendant may not claim, however, that the trial court's ruling on a motion to suppress must be reversed simply because the State failed to call a material witness to testify at the suppression hearing.

"In the final analysis, whether a confession is voluntary or involuntary is a matter of competency of the evidence which should be left to the discretion of the trial court." (*Patterson*, 154 Ill. 2d at 450.) A trial court's ruling on a motion to suppress a confession as involuntary will not be disturbed by a court of review unless it is against the manifest weight of the evidence. (*Patterson*, 154 Ill. 2d at 450.) Applying these principles to the facts presented in these consolidated appeals, we consider whether the trial courts properly denied the defendants' motions to suppress.

## A

In No. 72268, defendant R.D.'s motion to suppress alleged that his inculpatory statements to the police were involuntary because they were the product of psychological coercion and because his request for counsel was denied. To support his claim of psychological coercion, the defendant offered testimony that he overheard his codefendant implicate him in other crimes before he was questioned by Detective Rogers. The defendant claimed that the police intentionally left the door to his codefendant's interview room open to coerce him into confessing. It is apparent from the record that the trial court determined that the alleged act of coercion (leaving the door to a codefendant's interview room open) was insufficient

to render the defendant's statements involuntary or to support a claim of psychological coercion. The trial court rejected the defendant's claim because it found "no credible evidence presented showing that the conduct of the police was designed to extract a statement from *** respondent unwillingly." After reviewing the record, we find that the trial court's conclusion was not contrary to the manifest weight of the evidence. See *People v. Joe* (1964), 31 Ill. 2d 220 (evidence that police urged the defendant to tell the truth, without promising leniency, is insufficient to support a claim that the defendant's subsequent confession was involuntary); *People v. Hills* (1980), 78 Ill. 2d 500 (evidence that the defendant was intoxicated 12 hours before he confessed is insufficient to support a claim that his confession was involuntary).

The trial court also rejected the defendant's claim that his request for counsel was denied. The defendant testified at the suppression hearing that he asked to speak with a public defender before he made a statement to the police, but that his request was denied. Detective Rogers testified that the defendant waived his *Miranda* rights, including his right to speak with an attorney, before he made his statement. The trial judge, who was in the best position to assess the credibility of the witnesses, apparently found the State's witness more credible than witnesses for the defense. We do not believe that the trial court's decision was contrary to the manifest weight of the evidence. Accordingly, we affirm the trial court's denial of the defendant's motion to suppress.

## B

In No. 72269, defendant Alex Blankenship moved to suppress his statements to the police on the grounds that he was not given *Miranda* warnings and because his requests for counsel were ignored. The record shows

that the defense witnesses testified that the defendant was not given *Miranda* warnings immediately upon his arrest, while the State's witnesses testified that the defendant was given *Miranda* warnings immediately upon his arrest. The defense witnesses also testified that the defendant requested counsel on at least one occasion. The witnesses for the State, on the other hand, testified that the defendant never asked to call his attorney until he arrived at the police station.

The trial judge, who heard the testimony and observed the demeanor of the witnesses, apparently found that the State's witnesses were more credible than the witnesses for the defense. After reviewing the testimony at the suppression hearing, we cannot conclude that the trial court's decision was contrary to the manifest weight of the evidence. The State had no duty to call additional witnesses if it could meet its burden of proof without additional testimony. The defendant was certainly aware of the identity of the two police officers who allegedly heard his requests for counsel prior to the suppression hearing, and could have called those officers to testify if he considered their testimony necessary. Having failed to do so, he cannot claim that he was prejudiced by the State's failure to call them. Under the circumstances, the trial court properly denied the defendant's motion to suppress. (*People v. Somerville* (1990), 193 Ill. App. 3d 161; *People v. Goodrich* (1977), 48 Ill. App. 3d 141.) The appellate court's determination to the contrary is reversed.

### III

Defendant Blankenship cross-appeals from the trial court's denial of his motion to suppress evidence seized from the store. He claims that the evidence at the suppression hearing demonstrates that the police forcibly entered his store and that such unlawful entry tainted

the subsequent seizure of cocaine from the premises. The trial court specifically found, however, that the defendant's store was open for business at the time the officers entered it. The court found that the defendant's claim that the front and office doors were locked was not credible in light of the total evidence presented at the suppression hearing. The court thus determined that the police officers were in a place where they had a lawful right to be when they observed cocaine in plain view on a television set. These findings were amply supported by the evidence of record. Accordingly, we hold that the trial court properly denied the defendant's motion to suppress evidence seized from his store.

## IV

For the reasons stated, the appellate court's judgment in No. 72268 is reversed, and the circuit court's judgment is affirmed. The appellate court's judgment in No. 72269 is reversed, and the circuit court's judgment is affirmed.

> *No. 72268—Appellate court judgment reversed;*
> *circuit court judgment affirmed.*
> *No. 72269—Appellate court judgment reversed;*
> *circuit court judgment affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.